UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| EUGENE HUDSON, JR.,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN FEDERATION OF<br>GOVERNMENT EMPLOYEES,<br><br>Defendant. | Civil Action No. 17-1867 (JEB) |

**MEMORANDUM OPINION**

Plaintiff Eugene Hudson, former National Secretary-Treasurer for Defendant American Federation of Government Employees, challenges his removal from that office under two federal statutes and D.C. contract law. This case has now wound its way through three preliminary-injunction motions, a motion to dismiss, and an amended complaint. In this iteration of the litigation, AFGE again moves to dismiss. Finding that Plaintiff has stated a facially plausible claim on all but one count, the Court will largely deny the Motion.

**I.     Background**

The facts of this case have been thoroughly detailed in several prior Opinions. See Hudson v. Am. Fed. of Gov't Empls., 292 F. Supp. 3d 145, 149-52 (D.D.C. 2017) (AFGE I), vacated, Jan. 12, 2018; Hudson v. Am. Fed. of Gov't Empls., 289 F. Supp. 3d 121, 123-25 (D.D.C. 2018) (AFGE II); Hudson v. Am. Fed. of Gov't Empls., 2018 WL 1587473, at *1-3 (D.D.C. Apr. 2, 2018) (AFGE III). The Court, accordingly, will only briefly describe the factual and procedural background here.

1

A. Factual History

AFGE is a national labor organization representing over 1000 federal and D.C. government employees. See ECF No. 36 (Amended Complaint), ¶ 2. The National Executive Council (NEC) consists of three full-time national officers — National President, National Secretary-Treasurer (NST), and National Vice-President for Women and Fair Practices — and National Vice-Presidents for each of the twelve AFGE districts. Id., ¶ 3. Hudson was elected to two consecutive three-year terms as NST beginning in 2012. Id., ¶ 7. The Union will hold its triennial convention in August 2018, where Convention delegates will elect the national officers. Id., ¶ 8.

On August 19, 2016, Hudson sent his assistant a letter declaring his intent to run for national office at the upcoming Convention —which was later forwarded to AFGE's General Counsel — but he did not specify a particular position. Id., Exh. 6 (Committee of Investigation File) at 10. Three subsequent communications from Plaintiff to AFGE members form the crux of the disagreement between the parties.

Using AFGE-supplied mailing labels, he first sent a letter announcing his still-unspecified candidacy to AFGE local officers on August 26, and he followed that up with a postcard to the same group of people in October using mailing labels he purchased from AFGE. Id. at 7-8, 11, 13; Amend. Compl., ¶¶ 22-23. In November, one week after the American presidential election, Hudson directed an AFGE staff member to send his third communication: an email to a group of AFGE members detailing his views about the incoming Trump administration. Id., ¶ 32. He warned that the new administration would have a "bull's eye planted on the backs of federal workers and the unions that represent them" and questioned whether AFGE was "ready for this assault." Id., ¶ 31.

B. Procedural History

Nearly one month later, on December 21, 2016, National Vice-President Keith Hill filed an internal charge against Plaintiff. Id., ¶ 39. Hill asserted that Hudson had violated their Constitution by: (1) sending the August 2016 letter; (2) sending the October 2016 postcard; (3) maintaining a public website containing Union information; (4) directing his subordinate to send the November 15 email; and (5) referring to an AFGE staff member as the "Nigerian Nightmare" at a training. Id.

Pursuant to Article 13 of the AFGE Constitution, a Committee of Investigation was appointed on February 7, 2017, to consider the charges. Out of the five charges, the COI recommended that the NEC proceed only on the charge related to the post-election email, "find[ing] probable cause exists for the specific charge of malfeasance of office." Amend. Compl., Exh. 11 (COI Findings) at 1. Despite Hudson's request that several NEC members be recused for potential bias, the full NEC adopted the Committee's report, deliberated, and found Hudson guilty of the referred charge. Id., Exh. 15. It then voted to remove him from his position as NST but did not restrict his Union membership rights. Id., ¶ 55. Hudson has appealed the ruling to the National Convention, which, as noted, will take place this August. Id., ¶ 59.

Hudson then filed this suit, following his Complaint with a preliminary-injunction motion. See ECF Nos. 1, 4. After the Court granted the injunction on the ground of bias and ordered him reinstated, the Union convened another COI to reprocess the charges against Plaintiff without tainted members. Before those proceedings had concluded, however, Plaintiff withdrew the count upon which the Court had relied in its injunction, leading it to vacate that Opinion and Hudson's reinstatement. See Minute Order, Jan. 12, 2018. AFGE then filed a motion to dismiss, and Hudson followed shortly after with another motion for preliminary

injunction. See ECF Nos. 21, 30. The Court largely granted the former and then denied the latter as moot. See AFGE II, 289 F. Supp. 3d at 130-31; Minute Order, Feb. 7, 2018.

The internal Union machinery, meanwhile, plodded on. The second COI found, in addition to the violations via the November 2016 email, probable cause existed that Hudson had "violated AFGE Policy and Practice" in sending the August 2016 letter, and it referred both of those charges to the NEC. See COI File at 1. On February 6, 2018, the NEC found that Hudson had violated the AFGE Constitution in obtaining mailing labels for his August missive without announcing his candidacy for a specific office. The NEC also concluded that the November email was "campaign literature[,] as it was his third mass distribution in the brief period following his" candidacy announcement. See ECF No. 35-1 (NEC Decision). Because the November email "focused on a political topic," and he directed a Union staff member to distribute it "on AFGE's email server and computer system at the [U]nion's cost," the NEC determined that Hudson had violated the AFGE Constitution and Department of Labor regulations. Id. The Council then voted to suspend him from office as NST for the rest of his term.

Focusing on this second removal, Hudson filed an Amended Complaint with the Court's permission, and a third motion for preliminary injunction, which the Court denied. See AFGE III, 2018 WL 1587473, at *8. AFGE now moves to dismiss the Amended Complaint.

## II. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of an action where a complaint fails "to state a claim upon which relief can be granted." In evaluating Defendant's Motion to Dismiss, the Court must "treat the complaint's factual allegations as true . . . and must grant [P]laintiff 'the benefit of all inferences that can be derived from the facts alleged.'"

Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000) (quoting Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979)) (citation omitted); see also Jerome Stevens Pharm., Inc. v. FDA, 402 F.3d 1249, 1250 (D.C. Cir. 2005). The pleading rules are "not meant to impose a great burden upon a plaintiff," Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 347 (2005), and he must thus be given every favorable inference that may be drawn from the allegations of fact. Sparrow, 216 F.3d at 1113.

Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted). The Court need not accept as true, then, "a legal conclusion couched as a factual allegation," nor an inference unsupported by the facts set forth in the Complaint. Trudeau v. Fed. Trade Comm'n, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986) (internal quotation marks omitted)). For a plaintiff to survive a 12(b)(6) motion even if "recovery is very remote and unlikely," the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

The standard to survive a motion to dismiss under Rule 12(b)(1) is less forgiving. Under this Rule, Plaintiff bears the burden of proving that the Court has subject-matter jurisdiction to hear his claims. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). A court also has an "affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority." Grand Lodge of Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 13 (D.D.C. 2001). For this reason, "'the [p]laintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for failure to state a

claim." Id. at 13-14 (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1350 (2d ed. 1987) (alteration in original)). Additionally, unlike with a motion to dismiss under Rule 12(b)(6), the Court "may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction." Jerome Stevens, 402 F.3d at 1253; see also Venetian Casino Resort, LLC v. EEOC, 409 F.3d 359, 366 (D.C. Cir. 2005).

**III. Analysis**

The Amended Complaint lists four causes of action. Counts I and II allege that the Union violated Plaintiff's rights under the Labor-Management Reporting and Disclosure Act (LMRDA) when it removed him in August 2017 and February 2018, respectively. Counts III and IV allege that the Union acted contrary to its Constitution, violating the Labor Management Relations Act (LMRA) and D.C. law, respectively. The Court evaluates each below.

A. Counts I & II

Because Hudson's first two counts concern substantially the same underlying facts, the Court reviews them together. They both allege that Plaintiff's discharge was in retaliation for exercising his statutory free-speech rights, which, in turn, is a violation of the LMRDA. That Act protects a union member's "right to . . . express any views, arguments, or opinions," so long as the speech does not run afoul of the union's "reasonable rules as to the responsibility of every member toward the organization . . . and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations." 29 U.S.C. § 411(a)(2). The Union based the first removal on the November 2016 email and the second on both that email and the August 2016 letter. See Amend. Compl., ¶¶ 84, 126, 139. For both, Defendant admits that the communications were protected speech but contends that Plaintiff cannot state an LMRDA claim because the removal decisions were based on conduct, not speech.

6

1. *August Letter*

As a reminder, the charge related to the August letter was that Hudson had not properly obtained the mailing labels to send that missive. AFGE national officers are elected by delegates, and the NST provides "[a]ll declared candidates for national offices . . . [o]ne set of mailing labels" with the names and addresses of the delegates. Id., Exh. 8 (AFGE Constitution), App. A, Part II, §§ 1(c), 4(b). A candidate may request additional sets, but must purchase them. Id., § 4(b)(2). Hudson alleges that he followed this protocol in sending his August letter to local delegates. See Amend. Compl., ¶¶ 17-23. On August 19, he sent his executive assistant a letter proclaiming his "official notification of [his] candidacy for national officer at the 2018 National Convention." COI File at 9-10. One week later, he mailed a letter announcing his candidacy "using the free set of address labels provided by AFGE." Amend. Compl., ¶ 22.

AFGE claims that this did not follow Union protocol. Because he was the incumbent NST, the Union argues that he should have sent his candidacy declaration to the General Counsel to ensure that "he was a properly declared candidate." MTD at 16. It further contends that he, in fact, was not a "properly declared candidate" when he sent the August letter because he had "failed to state for which office he was running." Id. Based on this conduct, AFGE maintains that Hudson's removal was valid because "[w]ithout an explanation from the Plaintiff for how he properly obtained the mailing labels, the NEC made an adverse inference that [he] did not properly follow AFGE's procedures for acquiring mailing labels." Id.

Defendant's argument, however, requires the Court to determine who is a declared candidate for office under the AFGE Constitution, an inappropriate task for a motion to dismiss. Taking the facts in the Amended Complaint as true and giving Hudson the benefit of all inferences, the plain language of the Constitution says that the NST must provide a free set of

labels to all declared candidates, and Plaintiff alleges that he followed the rules by sending his assistant his declaration. See Amend. Compl., ¶¶ 19, 133. Hudson's allegations that he was improperly disciplined for such conduct are thus sufficient to state an LMRDA claim.

2. *November Email*

Hudson likewise passes the 12(b)(6) pleading bar by alleging that his November email could not serve as the predicate for a removal decision without violating the LMRDA. Shortly after the American presidential election, Hudson directed his subordinate, an AFGE employee, to send a three-and-a-half-page email to a large number of AFGE members using an AFGE computer and email account. As Defendant concedes that this email was "protected speech," Amend. Compl., ¶ 77, it must show that the email contravened a "reasonable rule" of the Union or a Department of Labor regulation to escape liability. See 29 U.S.C. § 411(a)(2). Because both AFGE rules and Labor regulations prohibit any use of union resources "to promote the candidacy of any candidate in a[] [union] election," 29 U.S.C. § 481(g), if Hudson's email was campaign speech, it would not be protected under the LMRDA, and a removal decision could be appropriate.

A motion to dismiss, once again, is generally not the appropriate place to decide whether a communication constitutes campaign literature because that is a mixed question of law and fact. See Dole v. Drywall Tapers & Finishers Local Union 1976, 733 F. Supp. 864, 866 (D.N.J. 1990) (finding facts and then holding "as a matter of law" that union mailing was campaign literature). In evaluating the nature of the statement, courts look to "the timing, tone, and content" of the publication, as well as any "general circumstances surrounding" it. Chao v. N. Jersey Area Local Postal Workers Union, 211 F. Supp. 2d 543, 551 (D.N.J. 2002).

8

Hudson denies that the email was campaign literature, contending that it was a "statement containing his personal views," Amend. Compl., ¶ 31, "about the impact of President Trump's election and its effect on AFGE and its members." Id., ¶ 90. At the preliminary-injunction stage, the Court held that the email would likely be considered campaign material. See AFGE III, 2018 WL 1587473, at *4-6. In so holding, however, the Court could only consider the record before it and did not presume Plaintiff's allegations true, as it must here. In light of the facts alleged in the complaint and the language on the face of the email itself, Hudson's claim that it is not campaign material is certainly not implausible. See Iqbal, 556 U.S. at 678 (complaint need only state facially plausible claim to survive motion to dismiss); Doe 1 v. Trump, 275 F. Supp. 3d 167, 192 (D.D.C. 2017) (discussing difference between motion to dismiss and preliminary injunction). At this stage that is all that is required: discovery could well bring to light additional facts that could affect the Court's (or a jury's) ultimate finding as to nature of the November email. Because Plaintiff has stated a plausible claim that the Union's cited reasons for his discharge were retaliatory in violation of the LMRDA, Counts I and II withstand the Motion.

B. Count III

Plaintiff next alleges in Count III that AFGE breached its contract with him via his removal and thereby violated the Labor Management Relations Act. Section 301 of that Act provides a federal cause of action for suits alleging a "violation of contracts between an employer and a labor organization representing employees . . . or between any such labor organizations." 29 U.S.C. § 185(a). In AFGE II the Court *sua sponte* raised doubts about whether it had jurisdiction to hear this claim because Hudson is not an employer or a labor organization. See 289 F. Supp. 3d at 130. In ruling on the third preliminary-injunction motion, the Court remained unpersuaded that federal court was the proper place for this claim given

9

Hudson's summary briefing on the issue, which argued in essence that "just as AFGE can apply Article XIII and XXIII to discipline him, he can sue AFGE for violating the rights the Constitution bestows on all members." ECF No. 37 at 32; see AFGE III, 2018 WL 1587473, at *7. In opposing the latest Motion to Dismiss, Plaintiff now makes clear that he is not attempting to sue on behalf of his local, but as a third-party beneficiary of the AFGE Constitution, which, as the Court already determined, is a "contract[] . . . between . . . labor organizations." Id. Given this new formulation, the Court agrees that it has jurisdiction to hear the claim.

The key decision here, Wooddell v. International Brotherhood of Electric Workers, 502 U.S. 93 (1991), permitted a union member to file suit against his local chapter, alleging that it had violated the international constitution. The Supreme Court found it "clear" that Wooddell had "charged a violation of a contract between two unions within the meaning of § 301" because his complaint alleged (and the local conceded) that the local had failed to abide by a section of the international union contract requiring locals to comply with the collective-bargaining contract. Id. at 100. It concluded that "[m]embers of a collective-bargaining unit are often the beneficiaries of such interunion contracts" and are thus entitled to bring suit under § 301 to enforce them. Id. at 101; see also Heintzman v. Amalgamated Transit Union Int'l, 825 F. Supp. 2d 161, 165-66 (D.D.C. 2011) (national officer's claim that union unlawfully withheld vacation pay in violation of constitution "falls within the bounds of Section 301(a)"). By alleging that AFGE breached its Constitution — a "contract between labor organizations" — Hudson may bring suit as a "third-party beneficiar[y]." Korzen v. Local Union 705, Int'l Bhd. of Teamsters, 75 F.3d 285, 288 (7th Cir. 1996). That is so even though he seeks to vindicate an individual right, rather than a breach by one of the parties of the Constitution.

AFGE tries to resist this conclusion, arguing that Hudson does not have standing to bring an LMRA claim because his home local represents only public employees. The Court disagrees.

Not all unions are covered by the LMRA. The Act borrows definitions from the National Labor Relations Act, which defines a "labor organization" as "any organization . . . in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers." 29 U.S.C. § 152(5). The NLRA — and LMRA by extension — specifically limits the term "employer" to the private sector. Id. § 152(2) ("The term 'employer' . . . shall not include the United States or any wholly owned Government corporation."). Courts have thus uniformly held that, because a public-sector union is not a "labor organization" under the LMRA, it may not bring a § 301 claim, and neither may public employees. See Cunningham v. Local 30, Int'l Union of Op. Engrs., 234 F. Supp. 2d 383, 395-96 (S.D.N.Y. 2002) (collecting cases).

Hudson, however, is not a public employee but was, until his ouster, a full-time AFGE employee. See AFGE Const., art. VII, § 1(b). AFGE, moreover, is a "mixed union," meaning it represents both private- and public-sector employees. The Department of Labor and this Circuit have interpreted the LMRDA, but not the LMRA, to apply to mixed unions. See 29 C.F.R. § 451.3(a)(4); Wildberger v. AFGE, 86 F.3d 1188, 1192 (D.C. Cir. 1996) (LMRDA applies to AFGE). Because the two statutes define "labor organization" in functionally equivalent terms, however, the Court finds that the LMRA also applies to mixed unions. Compare 29 U.S.C. § 402(i) ("'Labor organization' means a labor organization engaged in an industry affecting commerce . . . in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers."), with 29 U.S.C. § 152(5). It is thus irrelevant that Plaintiff's home local does not qualify as a labor organization. He is suing for a

11

breach of the AFGE Constitution, and at least some of the signatory locals to that contract represent private employees.

Moving to the merits, AFGE alternatively argues that Plaintiff has not "allege[d] any facts to demonstrate that AFGE violated its Constitution." MTD at 22. That is plainly untrue. The Amended Complaint alleges that AFGE violated its Constitution by: 1) including biased members in both COIs; 2) allowing its GC to "essentially bec[o]me the prosecutor" during the second NEC hearing; 3) "basing its decision on facts not in the administrative file"; and 4) exceeding the scope of the original charge. See Amend. Compl., ¶¶ 168-69, 171, 175, 179. "[D]etailed factual allegations" are not required to withstand a motion to dismiss, and Plaintiff has provided "sufficient . . . factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citation omitted).

Defendant's attempt to heighten the pleading standard by insisting that the Court must defer to a union's interpretation of its constitution likewise fails. See MTD at 28. While "[a]n interpretation of a union constitution rendered by officials of a labor organization is entitled to considerable deference," Monzillo v. Biller, 735 F.2d 1456, 1458 (D.C. Cir. 1984), that deference is not unyielding, and a court may decline to adopt the union's interpretation if it is "unreasonable or made in bad faith." Id. Whether the Union's interpretations meet that standard is beyond the scope of a motion to dismiss, which tests only the sufficiency of the complaint. See Sickle v. Torres Adv. Enterp. Solutions, LLC, 884 F.3d 338, 344 (D.C. Cir. 2018). For now, at least, Count III survives.

C. Count IV

Count IV alleges that AFGE's constitutional breaches violated D.C. law. As Plaintiff

concedes, "If the Court asserts jurisdiction over" Count III, Count IV is "preempted." Opp. at 34. The Wooddell Court's animating reason in allowing union members to sue for breach of contract in federal court was to prevent potentially inconsistent interpretations of union contract terms in state and federal courts. See 502 U.S. at 102. As a result, state-law claims that "purport[] to define the meaning or scope of a term in a contract suit therefore [are] pre-empted by federal labor law." Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 210 (1985). Count IV is thus preempted and will be dismissed.

## IV. Conclusion

For the above reasons, the Court will deny Defendant's Motion as to Counts I-III and grant it as to Count IV. A separate Order consistent with this Opinion will be issued this day.

*/s/ James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: June 25, 2018