UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| EUGENE HUDSON, JR.,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN FEDERATION OF<br>GOVERNMENT EMPLOYEES,<br><br>Defendant. | Civil Action No. 17-1867 (JEB) |

## MEMORANDUM OPINION

Seeing a storm brewing on the horizon, Plaintiff Eugene Hudson retained the legal services of Beins, Axelrod, P.C. When the squall indeed struck — Defendant American Federation of Government Employees removed Hudson from his post as National Secretary-Treasurer following an ethics complaint — Plaintiff's attorneys filed suit in this Court. Over the last two or so years, Hudson and his counsel have proceeded together along the winding path of litigation. Now, however, they stand at a crossroads. Citing a breakdown in their relationship, Hudson's attorneys seek to withdraw from his representation, leaving the case to another attorney from a separate firm who has since joined Plaintiff's team. Hudson insists that they stay on. Seeing no possibility for undue delay or unfair prejudice to Plaintiff, the Court will grant the attorneys' request and permit them to withdraw.

I.   **Background**

Any reader curious about Hudson's disputes with AFGE can turn to a nearly bottomless trove of prior Opinions on the subject. See, e.g., Hudson v. AFGE, 318 F. Supp. 3d 7, 9–10 (D.D.C. 2018); Hudson v. AFGE, 308 F. Supp. 3d 121, 123–26 (D.D.C. 2018); Hudson v. AFGE,

1

292 F. Supp. 3d 145, 149–52 (D.D.C. 2017), vacated by Jan. 12, 2018, Minute Order; Hudson v. AFGE, 281 F. Supp. 3d 11, 12–13 (D.D.C. 2017). Believing in the value of brevity, the Court will limit its discussion here to an overview of the case's procedural history, which is all that is necessary to tee up the issue at hand.

On September 12, 2017, Hudson, represented by Jonathan Axelrod and Justin Keating of Beins, Axelrod, P.C., filed suit against AFGE. See ECF No. 1 (Compl.) at 20. In a nutshell, he asserted that his termination as NST ran afoul of rights and protections afforded by two labor-law statutes. Id., ¶¶ 56–98. The docket has since been anything but quiet. AFGE's two motions to dismiss are outnumbered only by Plaintiff's three motions for preliminary injunction, all of which the Court has now addressed. The case has gone up on appeal and returned, after Plaintiff withdrew the count that had served as the basis of this Court's preliminary injunction. See Jan. 12, 2018, Minute Order; Hudson v. AFGE, 2018 WL 4610740, at *1 (D.C. Cir. 2018). Thereafter, seeking a more amicable resolution, the parties even tried their hands at mediation, only to come back to court with their grievances unresolved. They have since started discovery, and Plaintiff has also moved to file another amended complaint. That motion remains pending.

While all this was happening, a second case wound along a parallel path. On October 10, 2017 — just one month, nearly to the day, after his labor-law suit — Hudson filed another complaint against AFGE, this time alleging race-based discrimination in violation of Title VII. See Case No. 17-2094, ECF No. 1 (Title VII Compl.). The allegations of misconduct he asserted there spanned from 2012 up to and through his termination. Id., ¶¶ 19–43. After Hudson defeated part of a motion to dismiss, that case proceeded to discovery on a narrowed complaint. See Hudson v. AFGE, 308 F. Supp. 3d 388, 396 (D.D.C. 2018). Plaintiff is represented there by Marlene Denise Morten of Unfoldment Law Offices.

At some point, the attorneys' work on these two cases began to bleed together. Although the Court only referred the first case to mediation, the parties opted to include both cases in their discussion. See ECF No. 62 (Mediation Joint Status Report). Then, more significantly, Attorney Morten signed an amended complaint in this case, see ECF Nos. 64 & 76, which, under the Local Rules, effectuates her official appearance in this matter. See LCvR 83.6(a) (stating that eligible attorney enters appearance "by signing any pleading described in Fed. R. Civ. P. 7(a)") (emphasis added); Fed. R. Civ. P. 7(a)(1) (listing complaint). She has since submitted multiple filings on Hudson's behalf. See ECF Nos. 65, 68, 73, 74, 80, 82, 85.

As it turns out, not all was smooth behind the scenes. On May 23, 2019, Attorneys Axelrod and Keating moved to withdraw from their representation of Hudson in this case. As a basis, they cited both an untenable working relationship with their new co-counsel and a breakdown in communication with their client. Plaintiff, acting on his own behalf, opposed the Motion. Both parties expanded on their initial public filings with more robust submissions filed under seal. Such sealing, as should be evident, protects any discussion of legal strategy or work product leaking to the defense. Having carefully read both Hudson's and his attorneys' briefs and attached exhibits, the Court is now prepared to resolve the dispute.

## II.     Legal Standard

When an attorney takes on a representation, she generally assumes "an obligation to see the work through." Laster v. District of Columbia, 460 F. Supp. 2d 111, 113 (D.D.C. 2006). This duty, however, is not absolute. In the District of Columbia, Local Rule 83.6 governs the circumstances in which counsel may withdraw from a client's representation prior to the case's resolution. See Sabre Int'l Sec. v. Torres Advanced Enterprise Solutions, LLC, 219 F. Supp. 3d 155, 157 (D.D.C. 2016). This rule provides that when, as here, the client does not consent,

withdrawal can only be effectuated through order of the court following a formal motion.  See LCvR 83.6(c).  The decision to grant such motion "is committed to the discretion of the district court."  Byrd v. District of Columbia, 271 F. Supp. 2d 174, 176 (D.D.C. 2003).  Guided by the Local Rule, the Court may deny a motion "if the withdrawal would unduly delay trial of the case, or be unfairly prejudicial to any party, or otherwise not be in the interest of justice."  LCvR 83.6(d).  Salient factors in this determination include "the length of time the case has been pending, the time it would take for the party to find and secure new counsel" — if it has not already secured a replacement — "and the degree of financial burden counsel would undergo if he continued to represent the party in the case."  Sabre Int'l Sec., 219 F. Supp. 3d at 158.

## III. Analysis

One item of housekeeping is in order before jumping in.  As just mentioned, the Court has permitted both Hudson and his attorneys to file their explanations and oppositions under seal.  This Opinion, however, is public.  Hewing to the sanctity of the attorney-client privilege, the Court will speak only in generalities when discussing this Motion's precipitating events, keeping any particulars concerning litigation strategy or confidential information from public light.

The bottom line here, however, can be conveyed with little detail.  Attorneys Axelrod and Keating believe that they have reached an impasse with their client.  Not only do they diverge on litigation strategy, but they also claim to have lost the trust and communication that serve as the basis of a productive attorney-client relationship.  That relationship, they say, is now irreconcilably broken.  They assert that the same is true for the relationship with their now co-counsel, Attorney Morten.  Adding a belt to these suspenders, Axelrod and Keating also hint at a possible fee dispute with Hudson and contend that they cannot afford to continue on the present track.  Such representations regarding their relationship with their client — not to mention

financial difficulty — provide more than adequate grounds to withdraw, provided that the attorneys' departure would not result in undue delay or unfair prejudice. See, e.g., Sabre Int'l Sec., 219 F. Supp. 3d at 158 (noting attorneys' claim of "breakdown in communications" and "irreconcilable differences" with client); Laster, 460 F. Supp. 2d at 112 (permitting withdrawal based on representation that "client relationship is irretrievably broken"); Partridge v. Am. Hosp. Mgmt. Co., LLC, 289 F. Supp. 3d 1, 24 (D.D.C. 2017) (permitting withdrawal based on attorney's "'deteriorating relationship' with his clients" and "his clients' purported failure to pay for legal services").

Hudson, in his Opposition to the Motion, sets forth a different account from that of his attorneys. He sees the facts that led to the deterioration of their relationship in a fundamentally different light, one — perhaps unsurprisingly — that places more blame on the shoulders of his counsel. In doing so, he evinces serious displeasure with them. Hudson doubles down in an additional declaration filed *pro se* and *ex parte* this week, again emphasizing his disagreement with his attorneys' statements, actions, and strategy.

This dispute, however, and the vehemence with which it is asserted, only underscores the key point here: the relationship between client and attorney has turned for the worse. It matters not in this case who tells the more accurate tale; what does matter is the size of the gulf between client and counsel, which, judging from the filings, cannot now be easily traversed. Although they appear to agree on little else, one fact seems beyond dispute: both attorneys and Hudson are deeply unhappy with the course of their relationship and approach to the case. This divergence counsels toward withdrawal. As another court in this district has noted, when attorney and client "are unable to communicate and to agree on how to proceed in th[eir] litigation," then "difficulties" lie ahead if forced to continue working together. See Patridge, 289 F. Supp. 3d at

25. Absent undue delay or unfair prejudice, the Court thus thinks that the prudent course is to permit attorney and client to part ways. It is to those inquiries of delay and prejudice that it must now turn.

Starting with delay, one fact's salience rises above all others: Hudson already has another attorney on the case. The primary reason that withdrawal can often result in delay — *i.e.*, the time it may take to hire a new attorney and have her get up to speed to avoid proceeding *pro se* — simply does not apply since Hudson remains represented. See Laster, 460 F. Supp. 2d at 113–14. Attorney Morten first appeared on the docket in this case in April, but her involvement with the facts underlying Plaintiff's grievance began far earlier. She filed Hudson's Title VII case over two years ago, which bears significant factual overlap with this one. Morten also appears to have participated in mediation involving this case in the months prior to her formal appearance. See Mediation JSR (noting global mediation talks). As such, Plaintiff's case is anything but new to her.

In retort, Hudson notes that Morten's area of expertise lies in Title VII, rather than the labor-law issues handled by the attorneys from Beins, Axelrod. See ECF No. 83 (Hudson Public Opp.) at 2. The Court, however, sees nothing that prevents her from continuing to represent Hudson in this case. See Laster, 460 F. Supp. 2d at 114 (stating similarly in analogous situation). The law here is not so complex that an attorney steeped in the area is necessary to prevent the case from grinding to a halt. Not only is Morten already familiar with the facts, but she also has the benefit of multiple rounds of preliminary-injunction and dispositive-motion briefing already filed by the attorneys from Beins, Axelrod to familiarize herself with the legal arguments particular to this matter. And if Hudson desires to add another labor counsel to his team, he is of course free to do so.

The remaining relevant factors suggest that any disruption caused by the attorneys' withdrawal is unlikely to result in delay. Although the case is in discovery, there are no major looming deadlines, see Apr. 4, 2019, Minute Order (Discovery Schedule), nor is it at a particularly "sensitive stage." Byrd, 271 F. Supp. 2d at 177; see also Laster, 460 F. Supp. 2d at 113 (noting that limited pending matters in case favors granting withdrawal). This matter has been pending for almost two years and has already gone through multiple rounds of dispositive motions. The prospect of a trial remains far off. See Partridge, 289 F. Supp. 3d at 24 (finding factor of undue delay largely inapplicable when "no trial date has been set"). In fact, the only pending matter is a motion submitted by Morten, for which she filed the reply brief solo. See ECF Nos. 76, 80.

Finally, the Court notes that Hudson's attorneys from Beins, Axelrod provided notice of their potential withdrawal to Plaintiff months ago. Their Motion thus cannot have been a surprise to him. As such, he had ample time to begin his search for another labor attorney, were that how he had wished to proceed. See Laster, 460 F. Supp. 2d at 113–14 (noting significance of notice).

The prejudice inquiry meets the same fate. Although "'[u]nfair prejudice' in this context is a hefty standard," its might matters little here. See Banneker Ventures, LLC v. Graham, 2016 WL 1304834, at *3 (D.D.C. 2016). For, like delay, the Court finds no meaningful prejudice whatsoever. Because Defendant AFGE did not oppose the Motion, see ECF No. 79 (Withdraw Mot.) at 1, the Court focuses its lens only on Hudson. See Laster, 460 F. Supp. 2d at 113 n.4 (proceeding this way).

Here, again, given that Plaintiff already has another attorney who is up to speed on the facts, it is hard to even see how there is any meaningful opportunity for prejudice. See, e.g., id.

7

at 114 (noting no possibility of prejudice when counsel in related matter can "represent the plaintiffs going forward"); cf. Byrd, 271 F. Supp. 2d at 177 (noting possible prejudice when plaintiff forced to prepare for upcoming deadline *pro se*). Hudson nonetheless protests that he may wish to add another lawyer. Such objection simply does not do the trick. The fact that finding new counsel "may require time, effort, and funding" is a "burden[] facing every litigant and do[es] not constitute undue prejudice." Banneker Ventures, LLC, 2016 WL 1304834, at *3.

Hudson's remaining gripe is that he will have "wasted" money if his attorneys are permitted to withdraw. This one is hard to understand. He appears to have been paying his attorneys on a monthly basis for past work done. Over the course of this litigation, his attorneys have performed a plethora of tasks. That work does not go out the window simply because they are no longer representing Hudson, who retains the benefit of their past services. The Court sees no unfair prejudice here.

Finally, a word on the financial burden on counsel, which is the final factor necessary to consider in order to complete the task at hand. See Sabre Int'l Sec., 219 F. Supp. 3d at 158. From the filings, it appears that there is some dispute between Hudson and his counsel regarding fees owed. The Court does not wade into these waters and rests its decision largely on the breakdown of the attorney-client relationship and the lack of prejudice or delay. That said, the Court also accepts the attorneys' representation that continuing the case would impose a financial burden, which Hudson does not explicitly dispute. This assertion serves as an additional reason to grant their Motion. See, e.g., Partridge, 289 F. Supp. 3d at 24; Barton v. District of Columbia, 209 F.R.D. 274, 275 (D.D.C. 2002).

## IV. Conclusion

For these reasons, the Court will grant Plaintiff's Counsels' Motion to Withdraw as Attorneys. A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: July 12, 2019