# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| EUGENE HUDSON, JR.,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES,<br><br>Defendant. | Civil Action No. 17-1867 (JEB) |

## MEMORANDUM OPINION

The law does not reward those who sleep on their rights. Demonstrating why this maxim of equity exists, Plaintiff Eugene Hudson requests to add a bevy of claims to his Complaint nearly two years after he asserted almost identical counts in another case — most of which were soon dismissed — and months after he promised this Court and Defendant that he would not take the route upon which he now embarks. This slumber does not paint Plaintiff's newfound interest in reviving his claims in a flattering light. If mere annoyance were the only resulting harm, however, perhaps his lag could be excused. Unfortunately, the intervening period saw the death of a witness central to the newly added claims. And although Hudson attempts to climb out of this hole by constructing an explanation for his delay, he only digs himself deeper. A glance at the record reveals that the factual representations underlying his excuse fall far short of the veracity and candor the Court expects of those appearing before it. As a result, Hudson's delay and accompanying conduct, coupled with prejudice to the defense, have put to bed any chance of now expanding his Complaint. The Court will, accordingly, deny the Motion.

1

I.      **Background**

Over the last couple of the years, this Court has published a veritable tome of Opinions detailing Hudson's quarrel with Defendant American Federation of Government Employees. See, e.g., Hudson v. AFGE, 318 F. Supp. 3d 7, 9–10 (D.D.C. 2018); Hudson v. AFGE, 308 F. Supp. 3d 388, 391 (D.D.C. 2018); Hudson v. AFGE, 308 F. Supp. 3d 121, 123–26 (D.D.C. 2018); Hudson v. AFGE, 281 F. Supp. 3d 11, 12–13 (D.D.C. 2017); Hudson v. AFGE, 2017 WL 4325681, at *1 (D.D.C. Sept. 27, 2017). It has added to this volume as recently as this month. See Hudson v. AFGE, 2019 WL 3068295, at *1–2 (D.D.C. July 12, 2019). Some aspects of the procedural histories of Plaintiff's multiple cases nevertheless bear repeating here.

A long-time AFGE official, Hudson rose up through the ranks to become National-Secretary Treasurer in 2012, winning reelection to another three-year term in 2015. See Hudson, 318 F. Supp. 3d at 9. Within AFGE — a national labor organization with over 1000 affiliated local unions — the position of NST lies near the top. The occupant is one of three full-time national officers serving on the union's governing body, along with the National President and National Vice-President for Women and Fair Practices. Id. Like many rises, however, Hudson's was also followed by a fall. Following an internal charge that he had run afoul of the AFGE constitution via improper campaign activities, the union launched an investigation that resulted in Plaintiff's removal from office in August 2017. See Hudson, 308 F. Supp. 3d at 124–25. Understandably unhappy with this turn of events, Hudson turned to the courts.

In so doing, he took a bifurcated approach. First, on September 12, 2017, he filed this suit asserting that his termination violated rights and protections afforded by two labor-law statutes. See ECF No. 1 (Compl.), ¶¶ 56–98. This case has since gone through a slew of twists and turns both in and out of the courtroom, the contours of which need not be rehearsed. See,

e.g., Hudson, 2019 WL 3068295, at *1–2; Hudson, 308 F. Supp. 3d at 123–26. More relevant is that Hudson filed an Amended Complaint on February 13, 2018, which is currently the operative pleading. He now seeks to amend this Complaint again in the present Motion.

Less than a month after logging his first suit, Hudson registered another. In this alternate attempt to regain his prior position, he again sued AFGE, this time alleging that his tenure as NST was infected with race discrimination. See Hudson, 308 F. Supp. 3d at 392. Hudson's grievance took the form of a four-count Complaint, submitted on October 10, 2017, alleging employment discrimination, retaliation, a hostile work environment, and "pretextual discrimination." Id. The conduct at issue, he asserted, began in 2012 and culminated with his termination in 2017. Id. at 391–92. (Since the interaction of these two cases is pivotal to the Motion at hand, the Court, for clarity, will refer to the first (No. 17-1867) as Hudson's "labor-law suit" and the second (No. 17-2094) as his "race-discrimination suit.")

Faced with two cases concerning the same termination, AFGE moved to dismiss Hudson's later-filed Complaint. In an Opinion issued on April 10, 2018, the Court agreed that much of his race-discrimination case could not proceed. It found first that Hudson had not set forth the type of severe or pervasive conduct necessary to sustain his hostile-work-environment claim under Title VII. Id. at 395–96. Further, it noted that almost all the alleged conduct supporting the other three counts rested on Plaintiff's termination. This commonality with his labor-law suit created a problem. The doctrine of claim-splitting bars a later-filed complaint if, assuming the earlier filed suit were already final, the later complaint would be precluded by *res judicata*. Id. at 394. The Court thus dismissed his remaining claims on this ground, except for the portion of his discrimination count that did "not relate to Plaintiff's termination," which could proceed to discovery. Id. at 395.

3

One detail here is worth noting. In his opposition to AFGE's motion to dismiss, Plaintiff appeared to request permission to amend his labor-law suit to include the race-discrimination counts at issue as a means of avoiding Defendant's claim-splitting challenge. The Court denied this request without prejudice on April 10, 2018, noting that Hudson had not followed the appropriate rules. "[I]f he wishes to amend the [labor-law] complaint," the Court admonished, "he must seek leave to do so in that case, not here." Id.

Plaintiff, however, did not take up this invitation, instead proceeding to discovery on only the claims he already pled here. In the Rule 26(f) Report filed on July 31, 2018, Hudson stated that he did not "currently anticipate[] any need . . . to amend any pleadings." ECF No. 54 at 2. Given this representation, AFGE did not propose, and the Court did not provide, any deadline for seeking amendment. Id.; see also ECF No. 78 (Def. Opp.) at 7.

This spring, Plaintiff reversed course. Following a series of procedural errors, he filed the operative Motion for Leave to Amend his (already-once-amended) Complaint on May 8, 2019. The Court will discuss the details of his proposed new Complaint below. Suffice it to say for now, though, that it is primarily a smorgasbord of his labor-law and race-discrimination counts, including the dismissed counts. For those keeping track, this request to add new counts comes nearly a decade after the earliest conduct at issue, a little under two years since his termination, 17 months after he filed nearly identical counts in this Court, over a year after this Court dismissed many of those counts, and eight months after he told the Court and Defendant that he would not seek to amend. Adding to this list, AFGE notes in its Opposition that his Motion also comes several months after a key player in his termination passed away. See Def. Opp. at 4. To justify his delay, Hudson asserts that his added counts rest "on newly discovered evidence." See ECF No. 76 (Pl. Mot.) at 1.

4

## II. Legal Standard

A plaintiff may amend her complaint once as a matter of course within 21 days of serving it or within 21 days of being served a responsive pleading. See Fed. R. Civ. P. 15(a)(1)(B). Otherwise, she must seek consent from the defendant or leave from the court. See Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." Id. In deciding whether to grant leave to file an amended complaint, the court may consider "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." Foman v. Davis, 371 U.S. 178, 182 (1962). In this Circuit, "it is an abuse of discretion to deny leave to amend unless there is sufficient reason." Firestone v. Firestone, 76 F.3d 1205, 1208 (D.C. Cir. 1996). Furthermore, under Rule 15, "the non-movant generally carries the burden in persuading the court to deny leave to amend." Nwachukwu v. Karl, 222 F.R.D. 208, 211 (D.D.C. 2004).

## III. Analysis

In opposing Hudson's Motion, AFGE unleashes the full cavalry. Amendment at this point, Defendant says, is unduly delayed, prejudicial to the defense, and futile. See Def. Opp. at 9. Not to mention, it continues, that it believes bad faith to be motivating Plaintiff's choices. Id. Marching through these arguments, the Court need not reach the end of the line. Looking at the length of delay, the accuracy of Hudson's explanation therefor, and the resulting prejudice to Defendant, the Court finds inescapable the conclusion that Plaintiff's amendment is inappropriate at this stage.

A. <u>Undue Delay</u>

Start with undue delay. As the D.C. Circuit has made clear, a party's deficiency on this score presents an independently sufficient reason to deny his attempt to amend a complaint. See <u>Trudel v. SunTrust Bank</u>, 924 F.3d 1281, 1288 (D.C. Cir. 2019) ("'[U]ndue delay' is a valid ground for denying leave to amend."); <u>Elkins v. District of Columbia</u>, 690 F.3d 554, 565 (D.C. Cir. 2012) (similar); <u>Atchinson v. District of Columbia</u>, 73 F.3d 418, 426 (D.C. Cir. 1996) ("[O]ur case law also make[s] clear that undue delay is a sufficient reason for denying leave to amend."). This is especially true where, as here, the plaintiff seeks to add factual allegations rather than merely to clarify existing legal theories. See <u>City of Moundridge v. Exxon Mobil Corp.</u>, 250 F.R.D. 1, 6 (D.D.C. 2008); <u>cf.</u> <u>Harrison v. Rubin</u>, 174 F.3d 249, 253 (D.C. Cir. 1999) (noting that timeliness alone insufficient when "amendment would do no more than clarify legal theories or make technical corrections"). Although prejudice is a helpful inquiry in this determination, see <u>Atchinson</u>, 73 F.3d at 426 (noting that courts "should generally take into account . . . the possibility of any resulting prejudice"), it is not a necessary one. See <u>Harris v. Sec'y, U.S. Dep't of Veterans Affairs</u>, 126 F.3d 339, 345 (D.C. Cir. 1997) (holding that requiring prejudice would "reduce[] the multifarious reasons for denying leave to amend . . . to [a] single, non-exhaustive factor"). In deciding whether Hudson's delay is undue, the Court looks both to the absolute amount of time that has elapsed and the parties' conduct in the litigation during that period, including his explanation for the delay. See <u>Atchinson</u>, 73 F.3d at 426; <u>Trudel</u>, 924 F.3d at 1288; <u>City of Moundridge</u>, 250 F.R.D. at 6.

1. *Length of Delay*

Turning to the facts at hand, the magnitude of Hudson's delay here is no small fry. The clock measuring a plaintiff's tardy filing starts to run when he learns "sufficient information" to

6

assert the count. See LaPrade v. Abramson, 2006 WL 3469532, at *4–5 (D.D.C. Nov. 29, 2006); see also Anderson v. USAir, Inc., 818 F.2d 49, 57 (D.C. Cir. 1987) (affirming denial of leave to amend when "counts were based on facts known prior to . . . discovery" and new fact "bear[s] only tangential relation to the underlying incident"); United States ex rel. Westrick v. Second Chance Body Armor, Inc., 301 F.R.D. 5, 9 (D.D.C. 2013) (noting undue delay where "movants failed to promptly allege a claim for which they already possessed evidence"); McGee v. District of Columbia, 646 F. Supp. 2d 115, 121 (D.D.C. 2009) (denying leave to amend where "claims in an amended complaint are based on the same legal duties or facts asserted in the original complaint"); Hoffman v. United States, 266 F. Supp. 2d 27, 33 (D.D.C. 2003), aff'd, 96 F. App'x 717 (Fed. Cir. 2004) (counting from when plaintiff had "all the facts necessary to raise the claims" at issue). As Plaintiff acknowledges, he has known the core basis underlying his new proposed claims for years, including at the time he first filed suit in September 2017. See Pl. Mot. at 15–16; ECF No. 80 (Pl. Reply) at 11–12. This is only logical: the principal allegations concern others' conduct towards him, events for which he was not only a witness but the purported target. Perhaps for this reason, he posits that the counts he now seeks to add are not "new"; rather, the proposed amended Complaint "simply incorporate[s]" the claims from his race-discrimination suit filed in October 2017, including those previously dismissed. See Pl. Mot. at 15–16. Characterized in his own words, his Motion thus seeks to "restore[]" these claims from his race-discrimination case. Id. at 5. Since he could have asserted those claims in this case when he first filed suit, however, his current attempt to do so comes a year and a half late.

Hudson tries to compress this time. Even if he previously asserted similar counts, he says, his proposed amendment also incorporates "newly discovered evidence" obtained during discovery on the remaining count in his race-discrimination case. Id. at 1, 11. This argument

7

falls far short, as it rests on both shaky factual and legal foundations. (One logistical note before proceeding: Plaintiff's brief, which refers to information governed by a protective order signed by the parties, has been filed under seal. So as not to upset the parties' agreement, the Court will refer to certain information regarding this brief only in broad strokes.)

Starting with the legal issue, the clock measuring delay, as noted above, starts to run when a plaintiff possesses a sufficient factual basis to assert a count; it does not reset every time he later learns of some fact that may provide additional support for his argument. See Mittleman v. United States, 997 F. Supp. 1, 10 (D.D.C. 1998), aff'd sub nom. Mittleman v. King, 1998 WL 796300 (D.C. Cir. Oct. 15, 1998) ("Plaintiff's recent discovery of a new fact supporting this cause of action does not mitigate the extreme delay in her request to amend her complaint."); Yager v. Carey, 910 F. Supp. 704, 732 (D.D.C. 1995) (similar). And here, the obvious evidence of the date at which Hudson believed that he possessed the core relevant facts to assert these counts are when he did, in fact, first plead them. But there is more. Here lies the faulty factual footing.

As the Court sees it, the "new" facts that Plaintiff contends justify amendment do no such thing. These allegations fall into two overlapping buckets. The first are facts that cannot possibly be characterized as new. This category contains racial epithets directed his way, some of which he claims others also witnessed. See, e.g., Pl. Reply at 10. In other words, he cannot claim to have just learned of these. Also falling into this category are items that, as discussed more below, Hudson has previously mentioned to this Court in filings made long ago, rendering his current assertions of novelty suspect. Having reviewed the proposed Second Amended Complaint, there can be little doubt that the lion's share of relevant factual assertions was known to him at the time he first filed this case.

8

Second, other facts he claims to be new are simply incapable of justifying his delay. Some, compared with what he already knew, are so tangential as to border on irrelevant. Compare, e.g., Pl. Mot. at 16 with Dkt. 17-2094, ECF No. 11 at 5–6; see also Yager, 910 F. Supp. at 732 (concluding that even though plaintiff received certain documents later, that "does not change the fact that plaintiffs asserted" similar counts in separate matter "three months earlier"). For others, the moniker "new" is a poor fit. Plaintiff, for example, repeatedly references as newly discovered evidence a transcript of a union meeting he obtained on October 24, 2017. See Pl. Mot. at 18. Even if this evidence could justify adding a new count (*e.g.*, for disparate treatment) in 2017 — on which the Court takes no position — it certainly does not do so nearly two years later in 2019. See Yager, 910 F. Supp. at 732 (concluding similarly). Likewise, in his Reply, Plaintiff attaches several affidavits from witnesses who lament the union's treatment of Hudson. See Pl. Reply at 2–3. Not only do these affidavits post-date his proposed Second Amended Complaint — and thus cannot serve as its basis — the Court sees no reason why Plaintiff could not have obtained such evidence earlier. A plaintiff does not get the benefit of a reset clock for obtaining evidence years into litigation that he could have gotten at the start.

When Hudson ultimately moved to amend in the spring of 2019, therefore, the timer had been running since the fall of 2017. This is not a good look. Given the system's interest in the orderly administration of litigation, a delay measured in years gives the Court serious pause about permitting such a change now. See Harris, 126 F.3d at 345 ("Strategic or merely lazy circumventions of a legal process grounded in sound policy have the effect of eroding the regularized, rational character of litigation to the detriment of practitioners and clients alike."); cf. Borda v. U.S. Dep't of Justice, 306 F. Supp. 3d 306, 313 (D.D.C. 2018) (collecting cases of

undue delay ranging from two to five years and noting that "delay of several years between the filing of the initial action and the request to amend is generally undue").

    2. *Litigation Conduct*

Undue delay, however, is not solely a function of time; the Federal Rules, for instance, do not provide any sort of chronological cutoff after which amendment is unavailable. Whether a delay is undue, rather, rides also on the parties' "conduct in the litigation" and the circumstances particular to the case. See City of Moundridge, 250 F.R.D. at 6; see also Atchinson, 73 F.3d at 426 (similar). It is a decision accordingly vested "in the sound discretion of the district court." McGee, 646 F. Supp. 2d at 119 (citing Firestone, 76 F.3d at 1208). This latter inquiry proves dispositive. Tracing the course of this litigation — and Plaintiff's conduct in particular — first tips the scales away from the general equities favoring amendment and then, proceeding on, overwhelms them completely.

Starting at the beginning, one factual nub, already noted above, deserves another mention now: Hudson knew the core basis for the counts he currently seeks to add at the time he filed the instant lawsuit. See Pl. Reply at 11; Pl. Mot. at 15. In fact, he appears to have considered filing a single case at that time alleging both categories of claims, but ultimately did not pursue this option. See Pl. Reply at 11. Other courts have found this circumstance to constitute a sufficient basis for denying leave to amend. See LaPrade, 2006 WL 3469532, at *4 (denying motion where "plaintiff was aware of the facts giving rise to the cause of action before filing the complaint that she now wishes to amend"); Williams v. Savage, 569 F. Supp. 2d 99, 108 (D.D.C. 2008) (denying motion where "plaintiffs possessed the relevant information . . . when they filed their original complaint"); Yager, 910 F. Supp. at 731 ("The court finds that plaintiffs have been dilatory and they have unduly delayed their attempt to amend their complaint because plaintiffs

were aware of the facts giving rise to the cause of action before initially filing the complaint."). Hudson appears to try to get out from under this decision by attributing it to a lawyer no longer on the case. See Pl. Reply at 11. This fact has no bearing. Plaintiff does not get a do-over, untethered from his and his counsel's prior actions, when his legal team changes years into a litigation.

Even if Hudson's initial delay could be excused, his next steps cannot. To begin, he did, in fact, seek leave to amend his Complaint well over a year ago, which the Court granted. See Feb. 7, 2018, Minute Order; ECF No. 36 (Am. Compl.). Nary a mention of race discrimination nor any of the counts Plaintiff seeks to add, however, turned up in this new Complaint's 39 pages. See generally Am. Compl. As another court in this district explained, "It is well-established that '[t]he district court's discretion to deny leave to amend is particularly broad where a plaintiff previously has amended the complaint.'" Hajjar-Nejad v. George Washington Univ., 873 F. Supp. 2d 1, 12 (D.D.C. 2012) (quoting World Wide Rush, LLC v. City of Los Angeles, 606 F.3d 676, 690 (9th Cir. 2010)); see also Howell v. Gray, 843 F. Supp. 2d 49, 54 (D.D.C. 2012) (noting as factor "whether the plaintiff has previously amended the complaint"). Off the bat, things look poor for Hudson.

Then, in the same month, AFGE moved to dismiss Plaintiff's race-discrimination suit on the ground of claim-splitting. See Dkt. 17-2094, ECF No. 8. Two months later, on April 10, 2018, this Court granted that motion in large part, dismissing some of Plaintiff's claims for that reason and one for failing to state a claim. See Hudson, 308 F. Supp. 3d at 395. This means that by February 2018 — and certainly by April of that year — Plaintiff was on notice of the deficiencies related to claim-splitting in his race-discrimination case. Yet, until over a year later, he did nothing. On this ground, too, courts have denied a late attempt to amend. See Hajjar-

11

Nejad, 873 F. Supp. 2d at 11–12 (noting that party on notice of deficiency "fail[s] to 'avail themselves of an opportunity to rectify the deficiencies' 'at their peril'") (quoting Ca. Publ Emps. Ret. Sys. v. Chubb Corp., 394 F.3d 126, 165 (3d Cir. 2004)); see also City of Moundridge, 250 F.R.D. at 6 ("Leave may be denied if a plaintiff . . . had 'sufficient opportunity to state a claim and has failed to do so.'") (quoting Williamsburg Wax Museum, Inc. v. Historic Figures, Inc., 810 F.2d 243, 247 (D.C. Cir. 1987)). Having been "put on notice as to the deficiencies in his complaint," a plaintiff's decision to hit snooze extinguishes his option to cure down the road. See Krantz v. Prudential Invs. Fund Mgmt. LLC, 305 F.3d 140, 144 (3d Cir. 2002). What is more, in case Hudson had any confusion about the proper way to cure these deficiencies, the Court informed him in its Opinion that if he wished to amend his Complaint in this case, he must seek leave to do so. See Hudson, 308 F. Supp. 3d at 395.

Hudson, however, took the opposite course. Over three months later, he expressly disavowed any current intent to amend his Complaint. See ECF No. 54 at 2 (noting that Hudson did not "currently anticipate[] any need . . . to amend any pleadings"). It was many months before Plaintiff noted any intention to pull a one-eighty. With this course of conduct, his likelihood of success diminishes further. See Hajjar-Nejad, 873 F. Supp. 2d at 12 (faulting party for "expressly disclaim[ing] any intention of pursuing" claim he later sought to add).

Hudson, in retort to AFGE's reference to his general delay, notes that aspects of the case have been stayed twice during the course of the last two years. See Pl. Mot. at 2. Once, the Court granted AFGE's request to halt briefing on Plaintiff's motion for preliminary injunction pending an upcoming meeting of the union's National Executive Council, as the outcome of that meeting had some relation to Hudson's labor-law claims. See Jan. 29, 2018, Minute Order. This short stay of a briefing schedule, however, has little to no bearing on the race-discrimination

12

counts that Plaintiff now seeks to add, and it does not excuse his procrastination. Next, the Court stayed discovery on August 31, 2018 — almost five months, it notes, after its decision dismissing much of Plaintiff's race-discrimination case — while the parties engaged in mediation. See Aug. 31, 2018, Minute Order. This stay lasted until March of 2019. See ECF No. 62 (Joint Status Report); Mar. 21, 2019, Minute Order (ordering proposed discovery schedule). While this stay may help to forgive his inaction during mediation, it does not aid Plaintiff in explaining away the broad swaths of time preceding the stay nor his past steps in this litigation.

Taking all past action into account, the Court concludes that permitting amendment at this stage would "have the effect of eroding the regularized, rational character of litigation." Harris, 126 F.3d at 345.

3. *Explanation for Delay*

This brings us to the current moment. When there exists a delay in pleading a previously known allegation, a justifiable reason for delay can go a long way toward helping a plaintiff's cause; failing to provide one, conversely, does the opposite. See Trudel, 924 F.3d at 1288 (relying on fact that "plaintiffs offered no good reason for failing" to timely amend complaint); Williamsburg Wax Museum, Inc., 810 F.2d at 247 (affirming denial of leave to amend where movant "offered no explanation for its tardiness"); Borda, 306 F. Supp. 3d at 313 ("The reason for delay is also relevant to the determination of whether leave to amend should be granted."); James Madison Project v. Dep't of Justice, 208 F. Supp. 3d 265, 280 (D.D.C. 2016) (finding delay of approximately six months after being on notice of deficiency undue when "[p]laintiff provide[d] no reason for this delay").

13

Perhaps understanding the importance of providing a justification, Hudson attempts to offer one. As already noted, the basis of his current Motion, he says repeatedly, is the discovery of evidence previously unavailable to him. See Pl. Mot. at 1, 9, 11, 16, 21. He goes so far as to title his motion as one for "Leave to File . . . Based on Newly Discovered Evidence Obtained During Discovery." Id. at 1. (The discovery at issue, the Court notes, is not in the instant case, but in Hudson's race-discrimination suit.) The evidence to which he points, he says, "was not available until the March 20, 2019," deposition of AFGE President J. David Cox. Id. at 9. Plaintiff asserts that such "newly discovered evidence" is the basis of both his attempt to re-introduce his hostile-work-environment claim, as well as counts related to his termination. Id. at 9, 11.

The evidence to which Hudson points, however, is anything but new. "This evidence," he says, includes two incidents — one in 2011 and another 2015 — in which an AFGE employee referred to Hudson with a racial slur. Id. at 8. At Cox's deposition, Hudson said he learned that "AFGE officials at the highest level" knew of this conduct but refused to take remedial action. Id. at 8–9.

Simply put, Plaintiff did not learn these facts at Cox's deposition. First, he knew this happened in the very moment, as he was the target of the epithet. His own filings, moreover, leave no doubt about the inaccuracy of his statement. Faced with a motion to dismiss in his race-discrimination case, Plaintiff, in March 2018, extensively detailed this 2011 incident. See Dkt. 17-2094, ECF No. 11 at 4–8. In that discussion, his brief quotes from Hudson's filing made at the time with AFGE, in which he attests that Cox witnessed the incident, along with several other high-ranking AFGE officials. Id. at 5. His brief then laments that AFGE took no significant action against the offender. Id. at 7. This same filing also explains that he failed to include these

facts "and other examples of racially disparate treatment" in his Complaint only because his counsel had accidentally omitted them in "hurriedly" filing the Complaint. Id. at 8. Now, over a year later, Hudson asserts that this evidence is new to him and was unavailable before March 20, 2019. See Pl. Mot. at 8–9. The Court has trouble seeing this factual statement as anything short of a misrepresentation.

The same goes for the 2015 incident. Like the event described above, Hudson again was a central character in that dispute. And his proposed Second Amended Complaint itself asserts that he informed Cox about this issue in 2015. See ECF No. 76, Attach. 2 (Second Am. Compl.), ¶ 84. Again, Plaintiff's assertion that the existence of this incident and AFGE's reaction constitute newly discovered evidence is simply not accurate. See Pl. Mot. at 9.

Finally, Plaintiff says that he "also learned during the Cox deposition" of another incident of race discrimination. See Pl. Mot. at 8. This one did not involve Hudson and occurred more than a decade earlier in 2001, thereby rendering its relevance now questionable. More to the point, however, AFGE attests that Hudson's counsel acknowledged at the Cox deposition that Hudson knew of this incident as early as 2011, see Def. Opp. at 14, a point that goes unrebutted in Hudson's Reply. It is also of note that these events are fully detailed in a published judicial opinion. See Stone v. AFGE, 135 F. Supp. 2d 873 (N.D. Ill. 2001).

The Court finds troubling the delta between the statements in Hudson's brief and those established by the record. There is simply no "new evidence" capable of sustaining his Motion, despite his assertions to the contrary. This is a compound mistake for Plaintiff. First, he is left without a "good reason" for his delay, further undermining — and at this point, burying — his request for leave to amend. See Trudel, 924 F.3d at 1288. Second, the lack of veracity apparent in his filings counts against him. The Court depends on the representations of counsel for the

orderly administration of a case; such candor is a central tenet of the legal profession. The Court is not in the business of rewarding mischaracterization and will not validate counsel's flouting of this norm by granting the discretionary action Plaintiff seeks. Maintaining the integrity of the judicial process counsels against granting his request.

B. Prejudice

Even before reaching the question of prejudice, Plaintiff's request to amend his already-amended Complaint has fallen into a hole with unscalable walls. This inquiry, nonetheless, provides another reason to deny his Motion, see Foman, 371 U.S. at 182, at least with respect to the termination counts.

The "denial of the opportunity to present facts or evidence which would have been offered had the amendment been timely" is the paradigmatic form of prejudice. See Does I through III v. District of Columbia, 815 F. Supp. 2d 208, 215 (D.D.C. 2011) (internal quotation marks omitted); accord City of Moundridge, 250 F.R.D. at 6. That is the case here. AFGE points out that National Vice President Augusta Thomas — one of the three other national officials on AFGE's governing body — played an instrumental role in Hudson's termination. See Def. Opp. at 4–6. She would provide key testimony, AFGE says further, on whether race was, in fact, a factor in that decision, which is central to the discrimination counts Plaintiff seeks to add. Id. at 7–8.

Unfortunately, on October 10, 2018, Thomas passed way. Her testimony is thus no longer available to AFGE. This event occurred approximately a year after Plaintiff filed suit in this case and six months after this Court dismissed much of his prior race-discrimination counts on claim-splitting grounds, but about six months before he sought to amend his Complaint to add the race-discrimination counts. AFGE contends that it did not seek to preserve Thomas's

16

testimony prior to her death in reliance on Hudson's representations that he would not seek to amend this Complaint. See Def. Opp. at 18–19.

In his Reply, Plaintiff does not question Thomas's centrality to his race-discrimination case nor her irrelevance to his labor-law claims. His only beef, rather, is with AFGE's claim that it even knew of her poor health and thus would have sought to preserve her testimony if it had known of its necessity. See Pl. Reply at 17. Having reviewed the docket, however, the Court thinks it reasonable that in the thirteen months between when Hudson filed this case — and could have included his race-termination counts — and Thomas's death, AFGE could, and would, have obtained her deposition. Defendant, for its part, contends that Thomas was ill before her death, which would have prompted action. See Def. Opp. at 18–19. Its inability to do so now amounts to prejudice justifying the denial of Plaintiff's Motion.

\* \* \*

It is clear that Plaintiff would like to change course. In doing so, however, he is not free from this litigation's history. Hudson and his counsel have made a series of strategic choices during this case, including filing a Complaint and an Amended Complaint without any mention of the race discrimination for which Plaintiff alleges to have long had evidence. His repeated decisions to delay this avenue of attack — even when alerted by the Court and opposing counsel as to the procedurally correct way to proceed — have left him without the option of doing so now. This consequence is especially clear when, as here, the delay deprived Defendant of the opportunity to present key testimony. Hudson digs himself only deeper by filing a brief that relies on factual misrepresentations. The Court will not reward Plaintiff's attempt to revive his claims by trying to pull the wool over the Court's eyes.

## IV. Conclusion

For these reasons, the Court will deny Plaintiff's Motion for Leave to Amend. A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: August 2, 2019