UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| EUGENE HUDSON, JR., <br><br> Plaintiff, <br><br> v. <br><br> AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, <br><br> Defendant. | Civil Action No. 17-1867 (JEB) |

## MEMORANDUM OPINION

Roughly three years after the close of fact discovery and mere months from trial, Plaintiff Eugene Hudson, Jr. has filed a Motion seeking to reopen discovery and sanction the American Federation of Government Employees based on "recently" uncovered discovery violations. The Motion, however, is substantially a rehash of prior motions — based upon the same underlying facts — that this Court has repeatedly denied, a reality Plaintiff ignores. This continues a pattern of litigation misconduct, including vexatious and duplicative motions. The Court will not only deny Hudson's Motion, but it will also impose sanctions for the time AFGE spent in responding.

**I.   Background**

This case has followed a long and tortuous path since it commenced in September 2017. See Hudson v. AFGE (Hudson II), 630 F. Supp. 3d 214, 219–21 (D.D.C. 2022). The Court need not recount the details here, except to highlight the history most pertinent to the Motion.

This suit concerns Hudson's allegations regarding his ouster as National Secretary-Treasurer of AFGE. In July 2022, during summary-judgment briefing, Plaintiff submitted a document signed by National Vice President Philip Glover and styled an "Addendum" to his declaration that AFGE had attached in support of its summary-judgment motion. See ECF No.

1

191-1 (Glover Add.). There, Glover recalled for the first time that he and other members of AFGE's National Executive Council had attended a dinner at the Monaco restaurant here in Washington in June 2017 at which "the possible removal of [Hudson] and what that would mean in AFGE" were discussed. Id. Arguing that the Addendum contradicted earlier-filed declarations by Glover and other NEC members, Plaintiff moved to supplement the record and to reopen discovery to conduct depositions of those NEC members. See ECF No. 191 (July 2022 Mot.). The Court permitted Hudson to attach the Glover Addendum (and any other evidence he wished) to his reply supporting his cross-motion for summary judgment but denied his request to reopen discovery. See Minute Order of Aug. 23, 2022.

In that reply, Hudson articulated (once again) the theory that the allegations in the Addendum suggested that the NEC declarants had committed perjury, and he implored the Court to strike their declarations and impose sanctions. See ECF No. 202 (Pl. Cross-Mot. Reply) at 8–10. The Court declined to do so. See generally Hudson II, 630 F. Supp. 3d 214.

Some four months after the Court's summary-judgment ruling on September 26, 2022, Plaintiff filed a motion for reconsideration based upon "explosive, newly discovered evidence"— i.e., the same Glover Addendum that was the basis for his earlier motion to reopen discovery. See ECF No. 212 (Mot. for Reconsideration) at 3. He asked the Court to "reopen discovery and compel AFGE to respond to Plaintiff's written interrogatories, requests for production of documents, and requests for admission regarding the secret June 2017 NEC dinner meeting." Id. at 6. The Court denied the motion on July 17, 2023, noting that it had "already denied a similar motion to reopen discovery based on [the Addendum], an inconvenient fact that Hudson's present Motion does not appear to recognize," and that he had identified no reason why

that decision was incorrect.  See Hudson v. AFGE (Hudson III), 2023 WL 4560837, at *1 (D.D.C. July 17, 2023).

Returning to the well once again, on August 31, 2023, Plaintiff filed the instant Motion, which, like the prior ones, seeks additional written discovery, depositions, and sanctions based upon evidence of the same June 2017 NEC dinner and one other.  See ECF No. 243 (Pl. Mot.). Mindful that trial is scheduled for January 2024 — more than six years into the case — he nevertheless wishes to reopen discovery so that he may subsequently amend his Complaint to add new factual allegations and counts based on that evidence.  See id. at 9.

## II. Analysis

While Hudson moves for further discovery and sanctions, the Union, for its part, counters with accusations of misconduct meriting sanctions against Hudson.  The Court addresses the parties' dueling requests in turn.

### A. Hudson's Motion

First up is Plaintiff's Motion.  He seeks to (1) compel AFGE to "supplement its initial disclosures and written discovery responses," (2) compel "depositions of certain AFGE officials," (3) "strike the perjurious affidavits of seven NEC members," and (4) impose sanctions on AFGE for discovery violations.  Id. at 1.  As the basis for these demands, he cites "recently discovered evidence of two secret NEC meetings from which Plaintiff was excluded in violation of his rights under the AFGE Constitution" and that AFGE allegedly failed to disclose.  Id. (emphasis in original).  Those "meetings" are the June 2017 dinner referenced in his prior motions and another dinner (also at the Monaco) attended by NEC members in August 2017, shortly before Plaintiff was removed from his office as National Secretary-Treasurer.  Id. at 8.

3

As to the August 2017 dinner, Plaintiff's Motion is entirely devoid of detail or supporting evidence. He asserts that he "recently independently obtained evidence" of that dinner, but offers nothing further — *e.g.*, who was in attendance or what was discussed. Id. at 27; see also ECF No. 247-1 (Pl. Reply Decl.) (attesting that Hudson "was not informed about the second secret NEC meeting in August 2017 until July 2023" without detailing what he learned about the alleged meeting, from whom, or how). Nor does he attach the purported evidence to his Motion or an affidavit to substantiate his claims. The Court can afford Plaintiff no relief based upon conclusory assertions regarding this dinner.

What remains, then, is the evidence regarding the June 2017 dinner, which can hardly be characterized as "recently discovered." Pl. Mot. at 1. On at least three prior occasions, Plaintiff has cited this dinner as a basis for reopening discovery — including depositions and further interrogatories — as well as sanctioning AFGE and striking some of its declarations. See July 2022 Mot.; Pl. Cross-Mot. Reply; Mot. for Reconsideration. Plaintiff's latest assay is therefore just a reprise of the prior three. As he provides no reason why the Court's previous decisions on this topic were incorrect, the Court will adhere to them and again deny his request to reopen discovery and impose sanctions.

It still bears mention, however, that the Court has denied these requests in the past because his arguments on the merits were infirm, and his latest Motion is no different. Those arguments rest on two dubious premises — that the Addendum contradicts Glover's and other NEC members' declarations, and that the June 2017 dinner was an official NEC meeting, such that AFGE violated the Court's discovery orders by failing to disclose it.

Glover's original declaration stated that "some members of the NEC may have had discussions that this upcoming meeting [at which Hudson was removed] could have a substantial

4

impact on AFGE going forward," but added that he "did not have any discussion with the Committee of Investigation [COI], NP Cox, or any member of the NEC about: [t]he facts as found by the COI, [w]hat motions should be made during the meeting; or a desired outcome of the Special NEC meeting." ECF No. 181-17 (Declaration of Philip Glover), ¶ 16. Other NEC declarants similarly stated that they based their decisions to remove Hudson only on the findings of the COI. See, e.g., ECF No. 181-20 (Four NEC Member Declarations). Those averments are consistent with the Glover Addendum, which states in relevant part, "Individual charges were not discussed [at the June 2017 dinner], but there was discussion regarding the possible removal of [Hudson] and what that would mean in AFGE." Glover Add. at 1. The Addendum does not suggest, as Plaintiff insists, that Hudson's guilt was "predetermined" or that any NEC members "agreed" at the dinner to remove him long before the investigation was complete. See Pl. Mot. at 5–6.

Nor does Plaintiff persuade the Court that the June 2017 dinner constituted an official "meeting" of the NEC or that the Union's failure to disclose it violated the Court's discovery orders. Contra Pl. Mot. at 2–3. The AFGE Constitution defines a "meeting" as any gathering in which "a majority of the NEC" are present in the "same location" to "address business of the Federation." ECF No. 181-4 (AFGE Const.) at 20. But the Addendum does not suggest that the purpose of the June 2017 gathering at the Monaco was to address Federation business or even refer to the dinner itself as a "meeting." Nor does Hudson adduce any evidence that minutes, notes, audio recordings, or any other documentary records were produced at the dinner that could possibly fall within the ambit of the Court's April 28, 2020, Order. See Pl. Mot. at 2, 26–27; Minute Order of April 28, 2020.

His other allegations of discovery misconduct are meritless on their face, given that Defendant has not violated any Court Order. For example, the Court's July 27, 2020, Order stated that the Union "need not provide further documents pursuant to [Hudson's] Rule 30(b)(6) notice" — precisely the opposite of what Hudson contends. Compare Minute Order of July 27, 2020 (rejecting 33-page document request as "patently overbroad") with Pl. Mot. at 2 (quoting from paragraph 66 of Hudson's Rule 30(b)(6) notice and asserting that Court ordered further document production to comply with that request). The Court's September 23, 2020, Order did not "direct[] AFGE to produce documents" but rather permitted Hudson to inquire into certain topics at the deposition of AFGE's designated representative. See Pl. Mot. at 27; Minute Order of September 23, 2020. And the Court's September 16, 2020, Order did not "order[] AFGE to 'supplement and update'" its response to Plaintiff's Request for Admissions, but offered a window of time within which the Union could provide whatever update or supplement it wished. See Pl. Mot. at 2–3, 28; ECF No. 144 (Order on Pl. Mot. for Sanctions). Indeed, the thrust of the Court's Order was that it was inappropriate to "litigate the accuracy" of the Union's RFA responses pre-trial. See Order on Pl. Mot. for Sanctions at 2–3 (citation omitted). The Court offered a window to update those responses solely in deference to AFGE's apparent agreement to do so at a prior meet-and-confer. Id. at 3.

This is all to say that, although Plaintiff's failure to address the Court's prior denials of his motions to reopen discovery on its own justifies denying the instant Motion in full, his arguments on the merits are substantively weak (and premised on seriously inaccurate representations of the case's procedural history).

B.  AFGE's Request for Sanctions

The Union's request for sanctions stands on firmer ground.  It seeks such a penalty against Hudson pursuant to the Court's inherent authority or 28 U.S.C. § 1927 because of "the vexatiousness of the instant motion and its deceptiveness in failing to disclose 'inconvenient facts'" — *i.e.*, that Hudson has made the same arguments on multiple occasions and that the Court has rejected them in every instance.  See ECF No. 245 (Opp.) at 9.

Under § 1927, an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  An attorney's conduct is deemed unreasonable and vexatious when it evinces "recklessness, bad faith, or improper motive," any of which the Court may infer "from a total lack of factual or legal basis" in her filings.  Hall v. Dep't of Homeland Sec., 219 F. Supp. 3d 112, 119 (D.D.C. 2016) (citations omitted), aff'd sub nom. Hall v. Dettling, 2017 WL 2348158 (D.C. Cir. May 17, 2017).  In addition to this statutory sanction, the Court retains "inherent authority" to "impose sanctions necessary to achieve the orderly and expeditious disposition of cases before it."  Id. (citing Chambers v. NASCO, Inc., 501 U.S. 32, 46–47 (1991)).  "Under this broader authority, . . . a federal court may sanction an attorney who has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons,'" including through the award of attorney fees.  Id. (citing Chambers, 501 U.S. at 45).

The Court finds, on either basis, that Plaintiff has "unreasonably and vexatiously" multiplied the proceedings and has brought the instant Motion in bad faith.  By reprising the same arguments raised in his prior motions, Plaintiff blatantly disregards the Court's prior Orders rejecting them.  By failing to present any reason for reconsideration, misrepresenting certain of

7

the Court's discovery Orders, and neglecting to provide evidentiary support for the only novel factual assertion in the Motion — that there was a second NEC dinner in August 2017 — Plaintiff's Motion borders on frivolous. The Court can only interpret it (and the specter of a forthcoming motion to amend the Complaint) as a ploy to delay trial. This Court and at least one other has previously admonished Plaintiff against similar conduct traversing the ethical limits of zealous advocacy. See Hudson v. AFGE (Hudson I), 2019 WL 3533602, at *1, *6–7 (D.D.C. Aug. 2, 2019) (warning that Plaintiff's characterization of racial-discrimination evidence as "newly discovered" was misrepresentation "fall[ing] far short of the veracity and candor the Court expects of those appearing before it"); AFGE v. Hudson, 2022 WL 3098770, at *2 (D.D.C. Aug. 4, 2022) (sanctioning Hudson for disrespecting court order by filing unauthorized Rule 12(c) motion). In light of that history and the vexatious, duplicative nature of the instant Motion, the Court concludes that monetary sanctions are appropriate under both its inherent authority and Section 1927.

### III. Conclusion

The Court will, accordingly, deny Hudson's Motion and grant AFGE's request for sanctions. A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
Chief Judge

Date: November 28, 2023