**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| **EUGENE HUDSON, JR.,** |
| **Plaintiff,** |
| **v.** |
| **AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES,** |
| **Defendant.** |

**Civil Action No. 17-1867 (JEB)**

<u>**MEMORANDUM OPINION**</u>

After more than six years of arduous litigation, Plaintiff Eugene Hudson finally proceeded to a jury trial in this Labor-Management Reporting and Disclosures Act case alleging his wrongful removal from an officer position at American Federation of Government Employees, Defendant in this case.  Unfortunately for Hudson, even after a half decade of ripening, his claims did not bear much in the way of fruit at trial.  The jury found AFGE liable for his first removal, not liable for his second removal, and awarded zero dollars in damages.  As he has so often in this litigation, Plaintiff now seeks a do-over.  In his Motion for a New Trial, he claims that the Court committed several instructional errors, accepted an impermissible "compromise verdict," and improperly excluded certain evidence of damages.  And, despite clearly having lost the war, he separately seeks attorney fees for having won the battle on liability for his first removal claim.  Finding that a new trial is unwarranted and that Hudson is not entitled to fees, the Court will deny both Motions.

I.      **Background**

Since it commenced in September 2017, this suit has traveled a long and winding road, replete with more detours than the Court need recount.  See Hudson v. AFGE (<u>Hudson II</u>), 630 F.

Supp. 3d 214, 219–21 (D.D.C. 2022).  This Opinion picks up the story as the parties entered the homestretch: trying the case to a jury.  As Hudson's Motions largely do not depend on the factual details, the Court sets them out sparingly.

This suit concerns Hudson's allegations regarding his ouster as National Secretary-Treasurer of AFGE, a national union.  The basic timeline of events was undisputed at trial.  Having decided to mount a run for president in the Union's 2018 election, Plaintiff sent a series of communications to AFGE Local officers in 2016 announcing his candidacy and building out his platform.  The first communication was a letter sent in August, which referenced certain "structural problems" he had faced as "a guardian of the membership's money," including the NST's limited authority to prevent seemingly inappropriate uses of AFGE funds and abuses of expense vouchers.  See ECF No. 181-7 (Second COI Report) at 6–7 (August Letter); ECF No. 356 (Feb. 5 Tr.) at 46:12.  He then sent out a postcard in October, which similarly spoke of officials' misuse of Union funds and announced his intention to "correct" those abuses.  See Second COI Report at 10–11 (October Postcard); Feb. 5 Tr. at 46:15.  Last, Hudson emailed a letter in November after the election of Donald Trump.  See ECF No. 181-8 (November Email); Feb. 5 Tr. at 46:16–17.  It laid out the challenges ahead for the Union in a Trump administration, and — at least in Defendant's view — strongly implied that Hudson was better positioned than the current AFGE president to lead the Union through that turmoil.  See Feb 5. Tr. at 47:17–48:14; but see id. at 42:14–25 (Hudson arguing to contrary in closing).

Believing these communications were improper, an AFGE National Vice President filed a disciplinary charge against Hudson, and a Committee of Investigation was convened.  See ECF No. 181-14 (First COI Report).  That Committee found probable cause that, by sending the November email, Hudson had violated the AFGE constitution.  Id.  It thus referred the charge to

the Union's National Executive Council (NEC) for a final determination.  Id.  The NEC — a body composed of various union leaders — voted in August 2017 to remove Plaintiff from his position.  See Feb. 5 Tr. at 34:19–20, 46:20.

Hudson then filed this suit and initially secured reinstatement from this Court by way of a preliminary injunction, see Minute Order, Nov. 9, 2017, which was later vacated when he withdrew the count on which the injunction had been premised.  See Minute Order, Jan. 12, 2018.  To avoid testimony about court rulings and a separate mini-trial on ancillary issues, the jury was not privy to this procedural wrinkle.  It was told only that AFGE had decided to "set [the first removal] aside" because of "technical problems" and pursue a second vote.  See Jan. 29 Rough Tr. at 123:9–16.  As the jury heard, the second removal proceeding took place in February 2018, and it concluded just as the first had: with Hudson's removal.  See ECF No. 181-15 (Second NEC Decision); Feb. 5 Tr. at 34:23–24, 46:21–22.  He has not been reinstated since.

The suit challenged both removals as violating the LMRDA, and the central issue at trial was AFGE's motivation in removing Hudson.  Defendant portrayed both removals as by-the-book adjudications justified by Hudson's violation of AFGE constitutional rules — namely, appropriating Union resources for campaign purposes by directing a subordinate to send the November email and using the Union's mailing list.  Id. at 45:24–46:4.  Plaintiff cast that rationale as a pretext and argued that AFGE had in fact removed him in retaliation for his protected speech — i.e., his August and October communications exposing financial misconduct. See Feb. 5 Tr. at 35:4–9.

A topic conspicuously absent from the evidence presented at trial was Hudson's damages resulting from his loss of the NST position.  So much so that, at the close of evidence, the Court granted in part AFGE's Motion for Judgment as a Matter of Law on the matter.  It concluded that

there was "no evidence . . . whatsoever" of Plaintiff's lost wages on which the jury could base an award of economic damages.  Id. at 5:17–20.  The jury was, however, allowed to deliberate on the issue of noneconomic damages because the Court provisionally ruled (subject to later briefing on the issue) that it was possible to infer emotional harm from AFGE's alleged conduct. Id. at 5:21–6:4.  The Court also instructed the jury that it could consider punitive damages.  See ECF No. 342 (Jury Instr.) at 9.

During its days-long deliberation, the jury sent several notes indicating that it was struggling to reach a verdict, culminating in this note: "We are unable to reach a consensus and have no path forward."  ECF No. 357 (Feb. 12 Tr.) at 2:24–3:1.  After receiving an anti-deadlock instruction, id. at 5:6–24, however, the jury deliberated for an additional two hours and ultimately agreed on a verdict.  Id. at 6:13–20.  It found AFGE liable for Hudson's first removal from office, not liable for his second removal, and awarded zero dollars in damages.  See ECF No. 345 (Verdict Form).  Believing that various errors infected this verdict, Hudson now requests a new trial.  See ECF No. 360 (Mot. for New Trial).  He separately seeks attorney fees for securing a liability finding on his first removal claim.  See ECF No. 352 (Mot. for Fees).

## II.    Legal Standard

Plaintiff brings his Motion for a New Trial under Federal Rule of Civil Procedure 59(a)(1), which states that after a jury trial, "[t]he court may, on motion, grant a new trial on all or some of the issues . . . . for any reason for which a new trial has heretofore been granted in an action at law in federal court."  Although this articulation is less than helpful, other circuits have expanded on its meaning.  See, e.g., EEOC v. New Breed Logistics, 783 F.3d 1057, 1066 (6th Cir. 2015) ("The language of Rule 59(a) has been interpreted to mean that a new trial is warranted when a jury has reached a seriously erroneous result as evidenced by . . . the verdict

being against the weight of the evidence [or] . . . the trial being unfair to the moving party in some fashion.") (internal quotation omitted); Venson v. Altamirano, 749 F.3d 641, 656 (7th Cir. 2014) (same).  Instructional error can be cause for granting a new trial.  See Paulin v. George Washington Univ. Sch. of Med. & Health Scis., 45 F. Supp. 3d 9, 11 (D.D.C. 2014).  In all cases, Rule 59 "is not a vehicle for relitigating old issues, presenting the case under new theories, [or] securing a rehearing on the merits."  Sequa Corp. v. GBJ Corp., 156 F.3d 136, 144 (2d Cir. 1998).

Rule 51, in turn, governs the preservation of objections to jury instructions.  Such objections must be made "on the record, stating distinctly the matter objected to and the grounds for the objection."  Fed. R. Civ. Pro. 51(c)(1).  A party may assign as error a deficiency in "an instruction actually given" or "a failure to give an instruction, if that party properly requested it and — unless the court rejected the request in a definitive ruling on the record — also properly objected."  Id. 51(d)(1).  Unpreserved objections may be considered for "plain error."  See Muldrow v. Re-Direct, Inc., 493 F.3d 160, 168 (D.C. Cir. 2007) (where plaintiff "failed to object to the instruction at trial, [a court] may only consider [the] claim if the instruction constitutes 'a plain error . . . affecting substantial rights'") (quoting Fed. R. Civ. Pro. 51(d)(2)).  A new trial is warranted under this standard only if the error "seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings."  Id. at 169 (citation omitted); see also City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 256 (1981) ("'Plain error' review under Rule 51 is suited to correcting obvious instances of injustice or misapplied law.").

As for attorney fees, the Court will discuss the standard as part of its analysis.

### III.   Analysis

Hudson's request for a new trial is based on three flavors of error: with the jury instructions, by accepting a compromise verdict, and via improper evidentiary rulings.  Even without a new trial, he asks for an award of attorney fees based on what limited success he did achieve at trial.  The Court takes the Motions one at a time.

A.  New Trial

In seeking another go at trial, Hudson mostly raises objections he has never before mentioned.  In terms of instructional error, he maintains that the Court's causation instruction confused the jury and that, in any event, the instruction got the LMRDA causation standard wrong.  He further contends that the Court improperly omitted a nominal-damages instruction. Outside of the instructional realm, he submits that the jury's verdict must be rejected because it represents an impermissible compromise.  He also faults the Court for purportedly excluding his reputational-harm evidence.  The Court marches through these ascribed errors one by one.

1.  *Causation Instruction*

Hudson first sets his sights on the Court's instruction regarding causation under the LMRDA.  That instruction stated:

> In order for him to prevail, Plaintiff must prove by a preponderance of the evidence that Defendant removed him from his position as National Secretary-Treasurer in August 2017 and again in February 2018 because of his protected speech in the August and October 2016 mailers.  In other words, Plaintiff must prove that Defendant would not have removed him but for his sending of those two mailers.

See Jury Instr. at 7.  His objection is twofold: the Court's wording improperly suggested that damages could not be awarded unless the jury found AFGE liable for both removals, and the Court misstated the causation standard.  See Mot. for New Trial at 3–6.

a.   Wording

Plaintiff submits that the instruction's wording confused the jury.  Although the instruction could conceivably have engendered some misunderstanding if considered in a vacuum, that is not the question.  In assessing error, courts must consider the instructions "as a whole."  Czekalski v. LaHood, 589 F.3d 449, 453–54 (D.C. Cir. 2009) (citation omitted) (rejecting challenge to instruction that "want[ed] for clarity" because of other, clearer instructions given to jury).  Here, the causation instruction was followed by another — the damages instruction — explaining that the jury could "award Plaintiff a sum of money . . . for any mental suffering . . . he suffered from any removal [it found] invalid."  Jury Instr. at 8 (emphasis added).  That direction went a long way towards curing any uncertainty.

Any lingering questions, moreover, were undoubtedly settled by the verdict form, which clearly indicated that damages should be awarded on a claim-by-claim basis.  See United States v. Washington, 106 F.3d 983, 1012 (D.C. Cir. 1997) (finding verdict form clarifying of potentially confusing instruction).  Question One on the form asked whether AFGE was liable for Hudson's first removal, and Question Two asked separately whether it was liable for his second removal.  See Verdict Form.  Question Three asked, "What amount of non-economic damages, if any, do you award Mr. Hudson for emotional distress and mental anguish caused by any removal you find invalid?"  Id. (emphasis added).  Crucially, the form directed the jury to answer the third question if it had responded yes to "either Question 1 or Question 2."  Id. (emphasis added).  Following that roadmap, the jury filled out a response to Question 3 despite having found no liability for the second removal.  Id.  In light of the clarity demonstrated by the verdict form in particular, there is no doubt that the jury understood its task.

Blocker v. United States, 288 F.2d 853 (D.C. Cir. 1961), does not counsel otherwise. Contra ECF No. 366 (Reply ISO New Trial) at 2. There, the complained-of instruction plainly misstated the burden of proof such that a later instruction properly allocating the burden did not remedy the issue; it merely presented the jury with an untenable choice between two conflicting instructions. Blocker, 288 F.2d at 856. The potentially confusing wording at issue here, by contrast, does not blatantly contradict the other instruction or the verdict form. Hudson, in fact, seemed to acknowledge this in his opening brief. See Mot. for New Trial at 3 ("[A]s written, a reasonable juror could understand that Plaintiff could be awarded damages only if they found in favor on the Plaintiff on both counts.") (emphasis added). His updated characterization of the instruction as "directly contradict[ory]" does not pass the sniff test. See Reply ISO New Trial at 2.

### b.  Standard

Setting aside that instruction's wording, Hudson also finds it problematic for its statement of the standard. Whereas the Court told the jury that it was Plaintiff's burden to prove but-for causation, he maintains that he had to show only that retaliation was a "motivating" or "substantial" factor in his removal. See Mot. for New Trial at 5–6. He further contends that AFGE's argument that it removed him for violating the union-resources rule was "an affirmative defense that the Defendant has the burden of proving." Id. at 6.

To start, Hudson did not preserve this issue at trial. To be sure, discussion of the causation standard was not entirely absent from the record. In rebutting AFGE's first Motion for Judgment as a Matter of Law at the end of his case, Plaintiff stated on the record that "this is not a but-for standard" and offered some authority for that proposition. See ECF No. 330 (Feb. 1 Tr.) at 5:8–24. The Court, rather than ruling on the issue then, indicated that it could be

addressed "[w]hen we are discussing instructions."  Id. at 5:25–6:7.  Plaintiff thereafter requested

this instruction: "Plaintiff must prove that his sending of the August 2016 and October 2016

mailers to AFGE members exposing financial misconduct was a 'motivating factor' in

Defendant's decision to remove [him]."  ECF No. 332 (Pl. Proposed Instr.) at 7 (citing authority

in support).

      Yet when the Court's proposed final instructions employed the but-for standard instead,

Hudson apparently gave up his fight and decided against objecting at the charging conference.

See Feb. 5 Tr. at 8:14–16.  This was essentially fatal to preservation.  See Graham v. Davis, 880

F.2d 1414, 1420 (D.C. Cir. 1989) ("Because he did not make a specific objection to the court's

failure to give the requested instructions, he did not preserve the issue[.]"); Parker v. Dist. of

Columbia, 850 F.2d 708, 715 (D.C. Cir. 1988) (similar); Collins v. Alco Parking Corp., 448 F.3d

652, 656 (3d Cir. 2006) ("[M]ere omission of a requested instruction from the final charge does

not constitute a 'definitive ruling' excusing the failure [to] object[.]"); see also Advisory

Committee Note to Fed. R. Civ. P. 51 ("Many cases hold that a proper request for a jury

instruction is not alone enough to preserve the right to appeal failure to give the instruction.  The

request must be renewed by objection . . . when the court may not have sufficiently focused on

the request."); but see Hunter v. Cnty. of Sacramento, 652 F.3d 1225, 1230 (9th Cir. 2011) ("[A]

party may properly object by submitting a proposed instruction that is supported by relevant

authority, so long as the proffered language is sufficiently specific to bring into focus the precise

nature of the alleged error.") (cleaned up).  Although the Court's attention had been focused on

the issue previously, it was up to Hudson to raise it for further argument when instructions were

being finalized.

Nor was this a situation where further objection was unnecessary because Hudson's "position ha[d] previously been clearly made to the court and it [was] plain that a further objection would be unavailing." Stewart v. Ford Motor Co., 553 F.2d 130, 140 (D.C. Cir. 1977) (citation omitted). The Court invited further argument on the issue at the charging conference and then, after adopting an instruction different from the one Hudson requested, sought the parties' objections on the instructions as written. See Feb. 1 Tr. at 5:8–6:2; Feb. 5 Tr. at 8:14–17. There was no prior definitive ruling on the record that rendered any further objection futile.

Even if Hudson's proposed instruction had preserved the matter, that instruction did not accurately state the law, so declining to adopt it was not error. This conclusion follows from Plaintiff's own argument. By his lights, because Section 101(a)(2) of the LMRDA replicates the protections of the First Amendment for labor-union members, see 29 U.S.C. § 411(a)(2), the causation standard for such claims should mirror that used in First Amendment retaliation suits. See Reply ISO New Trial at 6–8. He thus endorses the "Mt. Healthy framework" as "the correct instruction." Id. at 8 (citing Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274 (1977)). Under Mt. Healthy, once a plaintiff establishes that retaliation was a motivating factor in the challenged action, the defendant must be given an opportunity to show that it would have taken the disciplinary action even in the absence of the protected conduct. See 429 U.S. at 287; see also Black v. Ryder/P.I.E. Nationwide, Inc., 970 F.2d 1461, 1469–70 (6th Cir. 1992) (affirming use of Mt. Healthy instruction in LMRDA case). The Mt. Healthy rule is, at bottom, a but-for causation standard, albeit one where the defendant bears the burden of proving the absence of but-for causation. See Greene v. Doruff, 660 F.3d 975, 979–80 (7th Cir. 2011). For that reason, Hudson's proposed instruction — which would have lowered the causation standard

without giving AFGE an opportunity to carry its burden in rebuttal — does not comport with even his version of the law.

That brings the Court to plain-error review.  Hudson did not preserve any winning argument regarding the causation standard — even if his proposed instruction had done the trick in terms of preservation — but was it nonetheless plainly erroneous to give a but-for instruction without placing the ultimate burden on AFGE?  Afraid not.

To start, there are valid reasons to think that the LMRDA does not vary from the default but-for standard.  For instance, AFGE relies on Comcast Corp. v. National Ass'n of African American-Owned Media, 589 U.S. 327 (2020), in which the Supreme Court explained that the "ancient and simple 'but for' common law causation test . . . supplies the 'default' or 'background' rule against which Congress is normally presumed to have legislated when creating its own new causes of action."  Id. at 332 (citation omitted); see ECF No. 363 (Opp. to New Trial) at 5.  One of the cases Comcast relied on for that proposition was Gross v. FBL Financial Services, Inc., 557 U.S. 167 (2009), which held that a provision of the Age Discrimination in Employment Act prohibiting adverse employment actions taken "because of" age created a but-for causation standard.  Comcast, 589 U.S. at 332; Gross, 557 U.S. at 174–76 (distinguishing Title VII's "motivating factor" language).

As AFGE points out, the Seventh Circuit, in turn, has cited Gross in holding that the LMRDA "contains no . . . language" suggesting a departure from the default but-for standard. Serafinn v. Loc. 722, Teamsters, 597 F.3d 908, 915 (7th Cir. 2010) ("Mixed-motive theories of liability are always improper in suits brought under statutes without language comparable to the Civil Rights Act's authorization of claims that an improper consideration was 'a motivating factor' for the contested action.") (quoting Gross, 557 U.S. at 177 n.3).  Serafinn reasonably

concluded that the LMRDA's enforcement provision — which forbids disciplinary action "for exercising any right to which [a union member] is entitled under the provisions of this chapter," 29 U.S.C. § 529 — was more similar to the "because of" language in Gross than Title VII's "motivating factor" language.  See Serafinn, 597 F.3d at 915 ("The word 'for' means 'by reason of,' and 'because of.'") (citing dictionaries).  Hudson's vehement disdain for using dictionary definitions notwithstanding, see Reply ISO New Trial at 5–6, it is eminently reasonable to read the LMRDA's language as sticking to the basic but-for standard in light of the comparisons noted in Serafinn.  Cf. Ford v. Mabus, 629 F.3d 198, 205–06 (D.C. Cir. 2010) (ADEA provision stating that "[a]ll personnel actions . . . shall be made free from any discrimination based on age" required use of motivating-factor standard because of its "sweeping language") (citation omitted).

Alternatively, Babb v. Wilkie, 589 U.S. 399 (2020), and Ford v. Mabus pose other hurdles for Hudson's theory.  In those cases, the Supreme Court and the D.C. Circuit, respectively, held that even though the ADEA provision under review enacted a motivating-factor standard, the heightened but-for standard should still apply to claims under that provision for anything other than "injunctive or other forward-looking relief" — i.e., claims like Hudson's for damages.  Babb, 589 U.S. at 411, 413–14; accord Ford, 629 F.3d at 207.  The courts reasoned that this carveout was necessary to avoid handing plaintiffs a "windfall" in situations where the employer would have "made the same decision absent consideration of age."  Ford, 629 F.3d at 207; accord Babb, 589 U.S. at 414 ("Remedies should not put a plaintiff in a more favorable position than he or she would have enjoyed absent discrimination.").  This conclusion was not based on statutory text, but rather on precedents and "traditional principles of tort and remedies law," such as the "bedrock [principle] that 'requested relief' must 'redress the alleged injury.'"

Babb, 589 U.S. at 413 (quoting Steel Co. v. Citizens for Better Environment, 523 U.S. 83, 103

(1998)). It thus stands to reason that LMRDA damages claims like Hudson's would require but-

for causation even if Serafinn were incorrect.

Nor did the Court's decision to instruct that Plaintiff carries the burden of proof constitute

plain error. Ford left undecided who would bear the burden of proving but-for causation (or its

lack) in an ADEA damages claim. But it noted that the statute's "silen[ce] on the allocation of

the burden of proof" — a feature shared by the LMRDA — was a reason to place the burden on

the plaintiff. Ford, 629 F.3d at 207. Ford also indicated that Congress's decision to "impose[] a

more rigorous" causation standard in the provision at issue — something, as noted, not clearly

true of the LMRDA — would count in favor of assigning the burden to the defendant. Id. Babb,

for its part, did not address allocation of burden explicitly, but implied that it lies with the

plaintiff. See 589 U.S. at 413 ("To obtain such remedies, these plaintiffs must show that age

discrimination was a but-for cause of the employment outcome.") (emphasis added).

As these cases indicate, the law is — at the least — not so clearly in Hudson's favor on

the applicability of the motivating-factor standard or who carries the burden of proof that the

given instruction amounts to plain error. See In re Sealed Case, 573 F.3d 844, 851 (D.C. Cir.

2009) ("Generally, an error is plain if it contradicts circuit or Supreme Court precedent

[or] . . . violates an 'absolutely clear' legal norm.") (citation omitted). This ground for a new

trial thus does not convince.

### 2. *Nominal-Damages Instruction*

Hudson's final instructional quarrel has to do with nominal damages. Specifically, he

believes that the Court should have informed the jury that upon finding liability on either

removal claim, it was required to award nominal damages.  The Court is not convinced that such an instruction is correct, nor that a new trial would be the appropriate remedy if it were.

Like his last claim of instructional error, Hudson did not preserve this issue.  Grasping at straws, he points to a case citation in his proposed jury instructions that, he says, "indicated a desire for an instruction on nominal damages to be considered."  Mot. for New Trial at 7 (citing Pl. Proposed Instr. at 8).  He so believes because in that case, the use of a nominal-damages instruction was affirmed.  Id.  To say the Court is unpersuaded would be putting it mildly.  The Court was not required to read Hudson's mind by inferring a particular instructional request from this citation, which he marked as "not to be read to [the] jury."  Pl. Proposed Instr. at 8.  What is more, because Plaintiff never raised the issue in subsequent exchanges about the instructions, anything in his proposal likely would not have preserved a claim of error, as previously discussed.  See Section III.A.1.b supra.  The Court thus reviews for plain error.

As an initial matter, Hudson's assignment of error comes up short because the Court's instructions nowhere precluded a finding of nominal damages.  The jury was told that it could "award Plaintiff a sum of money that will fairly and reasonably compensate him for any mental suffering, anguish, humiliation, or emotional distress he suffered."  Jury Instr. at 8.  The jury was thus free to decide that Hudson's injuries were best compensated by a nominal-damages figure. He retorts that without specific permission to award nominal damages, the jury "could not fully assess the actual gamut of possibilities concerning damages."  New Trial Mot. at 7.  True enough that a jury unschooled in the concept of nominal damages might not naturally gravitate toward that option.  But Hudson cites no authority for the proposition that a nominal-damages instruction is required to close that knowledge gap, let alone enough authority to make the Court's omission of such an instruction plainly erroneous.

Nor is the law so "absolutely clear" that nominal damages are required upon a finding of LMRDA liability that any error here would be plain.  See In re Sealed Case, 573 F.3d at 851 (citation omitted).  As AFGE correctly notes, many courts have determined that nominal damages, while a necessary corollary of liability for a constitutional tort per Carey v. Piphus, 435 U.S. 247, 266–67 (1978), and its progeny, are not likewise automatic upon a finding of statutory liability.  See, e.g., Walker v. Anderson Elec. Connectors, 944 F.2d 841, 845 (11th Cir. 1991) (nominal damages not required in Title VII case); Kerr-Selgas v. Am. Airlines, Inc., 69 F.3d 1205, 1214–15 (1st Cir. 1995) (not required in § 1981 case, at least where no request made); Louisiana ACORN Fair Hous. v. LeBlanc, 211 F.3d 298, 303–04 (5th Cir. 2000) (not required in FHA case); Opp. to New Trial at 10; but see Hicks v. Brown Group, Inc., 902 F.2d 630, 653 (8th Cir. 1990), vacated on other grounds, 499 U.S. 914 (1991) ("[P]roof of a violation of Section 1981 automatically entitled [plaintiff] to nominal damages[.]").  The Court need not take a position on whether nominal damages are required for the statutory claims here.  It suffices to conclude that Hudson's argument is not clearly supported and thus that there was no plain error.

In resisting this outcome, Hudson first frames his LMRDA claim as "a kind" of constitutional tort.  See Mot. for New Trial at 6.  He does not explain how that could be so, however, given that the LMRDA, unlike the Constitution, imposes liability on private actors.  He next quotes the D.C. Circuit's reference to "the duties created by the LMRDA, the breach of which gives rise to liability for any damages that result" in arguing that "it makes [no] sense for a jury . . . to find a violation of the LMRDA with no damages."  Reply ISO New Trial at 1 (quoting Quinn v. DiGiulian, 739 F.2d 637, 646 (D.C. Cir. 1984)); see also id. at 11.  That language, at best, suggests that liability follows when damages result from breach, not the other way around.  The Court is thus not persuaded.

Finally, even if the absence of a nominal-damages instruction were plain error, a new trial would be an unhelpful remedy.  Nominal damages are a creature of law, not fact.  Hudson apparently envisions a new trial on the issue of not whether to award nominal damages at all, but the amount of nominal damages.  The Court is hard pressed to understand what factual evaluation a jury would undertake to reach such a determination.  Nor is a new trial on damages necessary to account for "the possibility that the jury believed that punitive damages were warranted but were instructed to award punitive damages only if they award compensatory damages," Reply ISO New Trial at 10, because neither the instructions nor the verdict form limited the jury in that way.  See Jury Instr. at 8–9; Verdict Form (allowing jury to award punitive damages no matter the amount it awarded for compensatory damages). The zero-dollar punitive-damages award was thus not the product of a failure to instruct the jury on nominal damages.

If Hudson were correct that error occurred, then, the "appropriate remedy for that error" would be "for the court itself to enter judgment awarding the claimant nominal damages." Robinson v. Cattaraugus Cnty., 147 F.3d 153, 162 (2d Cir. 1998).  Some courts have understood that path to be blocked by the rule against additur set out in Dimick v. Schiedt, 293 U.S. 474, 486 (1935), which forbids invading the province of the jury by making factual determinations about the correct amount of damages.  See, e.g., Walker, 944 F.2d at 845.  But, as just stated, the amount of nominal damages is not a question of fact, and a judicial award of such damages encroaches upon no conceivable jury question.  See Robinson, 147 F.3d at 162 (finding Dimick inapplicable to nominal damages); see also Campos-Orrego v. Rivera, 175 F.3d 89, 99 (1st Cir. 1999) (noting that in First Circuit, "plaintiff may request the judge to instruct the jury on nominal damages, or in the absence of such an instruction, may ask the trial court for nominal damages

on the occasion of, or immediately after, the return of the verdict"). Because Hudson does not request an award of nominal damages, but rather a new trial on a question not fit for a jury, the Court has no need to decide whether such relief would be appropriate.

        3.  *Compromise Verdict*

Next up is Plaintiff's contention that the verdict in this case "represents an improper compromise between jurors," as illustrated by the facts that "the jury's award was clearly inadequate," "liability was strongly . . . contested," and the jury deliberated for a long time and then "rapidly reached a verdict after receiving a deadlock charge." Mot. for New Trial at 7–8. All of this proves, he insists, that the jury's determination "could <u>only</u> have been a sympathy or compromise verdict" of a type the Court cannot accept. <u>Id.</u> at 9 (quoting <u>Spell v. McDaniel</u>, 824 F.2d 1380, 1400 (4th Cir. 1987)).

As AFGE correctly contends, generally speaking, "compromise verdicts" — *i.e.*, those resulting from jurors voting for an outcome with which they do not genuinely agree — are allowable. <u>See</u> Opp. to New Trial at 12 (citing <u>United States v. Campbell</u>, 684 F.2d 141, 151–52 (D.C. Cir. 1982)). Indeed, Hudson does not disagree. He acknowledges that compromise is acceptable, as recognized in <u>Campbell</u>, "when jurors agree to a legally sound verdict." Pl. Reply ISO New Trial at 11. Still, this case is different, he says, because "it appears that [the] jurors agree[d] to something they legally cannot." <u>Id.</u> That, in combination with other "indicia of a compromise," means that "a complete new trial is necessary." <u>Id.</u> at 7–8 (quoting <u>Mekdeci v. Merrell Nat'l Labs.</u>, 711 F.2d 1510, 1513–14 (11th Cir. 1983)).

Unfortunately for Plaintiff, he stumbles out the gate because there is no inherent conflict in the verdict between the jury's liability finding and its decision not to award damages. AFGE rightly submits that the jury was far from, as Hudson put it, "nonsensical to determine liability

without [awarding] damages."  Mot. for New Trial at 8.  No evidence of emotional distress —

the only basis for damages the jury was instructed to award on — was presented at trial.  See

Opp. to New Trial at 11–12.  The jury could thus only speculate as to any non-economic harm

that Plaintiff had experienced.  As such, not only was its determination well within the bounds of

reason, but ordering a new trial for an award of damages would possibly constitute reversible

error.  See Radwan v. Carteret Bd. of Educ., 62 F. App'x 34, 38 (3d Cir. 2003) (finding that

district court abused its discretion by ordering new trial when jury awarded no damages for

emotional distress stemming from employment discrimination, where evidence of distress was

minimal and "unsupported by medical testimony or medical records").

       This is, moreover, unlike cases cited by Hudson in which the "verdict [was] manifestly

inadequate to compensate for undisputed physical and economic harm," Spell, 824 F.2d at 1400,

or where the parties stipulated to a certain damages figure that the jury ignored.  See Mekdeci,

711 F.2d at 1514; Mot. for New Trial at 8–9.  Indeed, Plaintiff spends no time arguing that any

whisper of emotional-distress evidence before the jury necessitated a certain damages award.

Nor does he offer other authority for the view that a jury must give a certain amount of

emotional-distress damages based on the nature of this kind of conduct alone.

       As a last-ditch effort, Hudson reverts to another familiar topic: nominal damages.  He

asserts that "[b]ecause the jurors found that [AFGE] was liable to [him], it was obligated, under

circuit precedent, to award [him] a non-zero amount of damages."  Reply ISO New Trial at 11.

This argument meets with no more success here than it did previously.  As already discussed, the

jury's failure to award a nominal sum is at most a legal deficiency remediable by court order, not

a factual deficiency attributable to errors in the jury's decisionmaking process.  Nor does it

indicate that the jury improperly compromised, given that the instructions did not touch on the

purported legal requirement to award nominal damages.  Cf. Spell, 824 F.2d at 1400 (failure to award factually adequate damages reflects compromise in form of either "a jury's desire to give at least a little something to an attractive claimant despite serious reservations or outright doubt about the proof of defendant's culpability; or an unwillingness adequately to compensate an unattractive claimant despite overwhelming proof of culpability").  The verdict comported entirely with the instructions given, and any legal error concerning nominal damages is no reason to order a new trial.

### 4.  *Evidence of Reputational Harm*

Last in the litany of Hudson's arguments for a new trial is that he was not afforded the opportunity to put on evidence of reputational harm.  As the Court never prevented him from doing so, this objection can be put to rest quickly.

In a pretrial Order, following motions-*in-limine* briefing that focused the Court on mental anguish and attorney fees, the Court explained that Plaintiff could "present damages evidence only as to: (1) backpay . . . ; and (2) mental anguish caused by his removal."  ECF No. 303 (Pretrial Order) at 4; see ECF No. 249 (Def. Mot. *in Limine*) at 2.  He could not, it elaborated in the pretrial conference, present medical evidence, expert emotional-distress testimony, or attorney-fees evidence.  See ECF No. 305 (Jan. 11, 2024, Pretrial Conf.) at 7:3–12; see also Def. Mot. *in Limine* at 13–15 (moving to exclude such evidence).  Although this Order appears to exclude reputational-harm evidence, that is only because Hudson never brought the Court's attention to his desire to offer such evidence nor indicated what it would consist of.

In claiming otherwise, Plaintiff identifies a single mention of the topic in the original 171-page pretrial filing (only 12 pages of which came from AFGE alone) — namely, he included a line item for reputational damage as part of his damages calculation.  See ECF No. 286-5.  That

buried line item, however, was no magical beacon signifying a request to put on evidence. At the risk of stating the obvious, a damages calculation is not evidence, and nothing else in the bulky pretrial filing even hinted that Hudson planned to present facts going to reputational harm. Not his statement of the case, not his witness list describing each witness's anticipated testimony, and not his exhibit list. Even now, he does not describe particular evidence he wished to put on in the absence of the Court's Order, arguing only that his reputational-damages claim in general was stymied. See Mot. for New Trial at 9–10; Reply ISO New Trial at 11–12. To exclude evidence, a court has to know that it exists. Plaintiff did not even attempt to put the Court on notice, so no exclusion occurred.

Nor did Hudson raise the issue, even in the abstract, in the voluminous motions-*in-limine* briefing, during either pretrial conference, or during trial itself. See ECF No. 252 (Pl. Mot. *in Limine*); Jan. 11 Pretrial Conf.; ECF No. 319 (Jan. 19, 2024, Pretrial Conf.). Not even when the Court stated that "the only damages [it] see[s] that are eligible here are backpay . . . and any emotional distress damages related solely to his removal." Jan. 11 Pretrial Conf. at 10:16–22. Given these omissions, the Court never had an opportunity to address any misperception that it would have excluded reputational-injury evidence had Hudson tried to introduce it. Plaintiff's newfound interest in this damages theory — like each of his arguments before it — does not justify a new trial. As all of his contentions came up empty, the Court can safely deny the Motion.

B. Attorney Fees

The Motion for New Trial put to bed, the Court must next address Hudson's separate request for attorney fees in recognition of what success he did achieve at trial — *i.e.*, a liability verdict on one count. The Court asked each side to brief the foundational issue of his entitlement

to such fees before moving, if necessary, to the specific amount requested.  Under the "American Rule," each party ordinarily bears its own attorney fees.  See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 245 (1975).  Although this default rule can be altered by express statutory authorization, id., the relevant provision of the LMRDA does not expressly contemplate attorney fees.  See 29 U.S.C. § 412 (providing for "such relief (including injunctions) as may be appropriate").  Still, an award may be available under the equitable common-benefit doctrine, which "makes possible an award that will operate to spread the costs proportionately among" the members of an "ascertainable" group — here, the rank and file of the Union — where "successful litigation confers a substantial benefit" on them.  Hall v. Cole, 412 U.S. 1, 5 (1973) (cleaned up); see id. at 7–8.  This approach prevents "the others [from] obtain[ing] full benefit from the plaintiff's efforts without contributing equally to the litigation expenses," which "would be to enrich the others unjustly at the plaintiff's expense."  Id. at 6 (cleaned up).

In Hall, the plaintiff asserted an LMRDA speech-retaliation claim similar to the one here, obtained an injunction in his favor, and sought attorney fees.  Id. at 2–3.  The Court first recognized the applicability of the common-benefit doctrine to LMRDA claims.  Id. at 7–8.  It then held that the plaintiff had conferred a substantial benefit on members of the union through his success in the suit.  Id. at 8–9.  Specifically, although the injunction ordering his reinstatement as a union member largely redounded to his own betterment, his successful litigation had a salutary effect on the operations of the union — "by vindicating his own right, the successful litigant dispel[led] the 'chill' cast upon the rights of others."  Id. at 8.  That was enough to justify attorney fees.

AFGE seeks to set this case apart from Hall in three ways.  First, it argues that Hall limited fee awards to "successful" plaintiffs, and it contends that Hudson has not succeeded in

this suit, as indicated by analogous caselaw elucidating what it means to be a "prevailing" party. See ECF No. 358 (Opp. to Fees) at 2–3.  Second, it asserts that AFGE members were not benefited by Hudson's victory.  Id. at 4.  Third, it maintains that because the common-benefit doctrine is equitable in origin, Hudson's unclean hands — that is, his consistently vexatious litigation behavior — should prevent him from recovering.  Id. at 4–5.  As the Court is persuaded by what lies behind doors two and three, it leaves door one closed.

Begin with the benefits.  By obtaining a liability verdict on one count of removal but no damages or other relief, Hudson conferred essentially no benefit on members of the Union.  Hall teaches that dispelling the chill created by union retaliation is a cognizable benefit.  See 412 U.S. at 8.  In that case, it was clear that a union member cowed by the plaintiff's initial expulsion from the membership would take heart in his reinstatement.  See id.; see also Yablonski v. United Mine Workers of Am., 466 F.2d 424, 431 (D.C. Cir. 1972) (plaintiff's reinstatement "demonstrated that the courts would be quick to strike down any heavy-handed retaliation against a union member who dared to challenge the incumbent leadership").  But it is unclear what about Hudson's partial win here would rein in Defendant's behavior so as to reassure AFGE members about their ability to engage in free expression.  The Union has incurred no costs from the jury's decision, and it has not been forced to welcome Plaintiff back into the fold.  Most onlookers would see that outcome as AFGE's getting off scot-free.  Nor would reinstatement have been appropriate here because the jury found no liability on the second removal claim.  Hudson's win, far from breaking significant ground, extended only to an exceedingly fleeting violation.  The verdict likewise does not work any other change at the Union that has been recognized as sufficient, such as increased transparency or "promulgation of detailed rules . . . designed to assure fair and honest elections."  See Yablonski, 466 F.2d at 431.  In short, liability

in name only for a short-lived violation, absent any institutional change, does not bring about a "substantial benefit" for a union's members.

In light of this suit's failure to dissipate any chill caused by AFGE's actions, Hudson's contention that "[t]he potential chilling effect . . . is more pronounced when elected officials are discharged," Mot. for Fees at 2 (quoting Sheet Metal Workers' Int'l Ass'n v. Lynn, 488 U.S. 347, 355 (1989)), is immaterial. The relevant consideration is not the degree of chilling, but the alleviating effect of Hudson's liability verdict.

This same result on fees would obtain even if Hudson had secured an award of nominal damages. Just as a liability finding alone is cold comfort to intimidated members of a union, a symbolic (and miniscule) damages award acts as hardly any deterrent at all. See Douglas v. Cunningham, 294 U.S. 207, 209 (1935) (explaining that statutory damages for copyright violations were adopted because without them, rights holders "were able to recover only nominal damages," and the "ineffectiveness of [that] remedy encouraged willful and deliberate infringement"); cf. Farrar v. Hobby, 506 U.S. 103, 115 (1992) ("When a plaintiff recovers only nominal damages because of his failure to prove an essential element of his claim for monetary relief, the only reasonable fee is usually no fee at all."). Nominal damages therefore would not magically transform the verdict into one substantially benefiting AFGE members.

Equitable principles only add to the force of the conclusion that fees are uncalled for in this case. The Court is reluctant to heap additional costs onto the heavy financial burden already placed on AFGE's members by Hudson's overlitigation of this case. Just months before trial, the Court ordered sanctions on him because he had "'unreasonably and vexatiously' multiplied the proceedings and ha[d] brought [a motion for reconsideration] in bad faith." Hudson v. AFGE, 2023 WL 8234191, at *4 (D.D.C. Nov. 28, 2023). In so doing, the Court noted a pattern of

similar prior conduct.  Id. at *1–2, *4.  That behavior continued into trial.  During a pretrial conference, the Court noted that Hudson's pretrial statement was "in fantasy land" because it proposed "87 hours" of trial testimony in Plaintiff's case alone, whereas the trial as a whole had been scheduled for a week.  See Jan. 11 Pretrial Conf. at 4:8–12.  His request for $54 million was equally untethered from reality.  Id. at 4:16–17.  These litigation antics make Plaintiff undeserving of common-benefit fees.  Additionally, in light of the expenses AFGE — and thus its members — have already incurred in parrying these tactics for over six years, additional attorney fees would make the costs of Plaintiff's tiny "victory" pyrrhic indeed.  As AFGE members have already lost far more than they have gained from this litigation, there is no unjust enrichment to remedy.  See Hall, 412 U.S. at 6.

## IV.    Conclusion

The Court will, accordingly, deny Hudson's Motion for New Trial and his Motion for Attorney Fees.  A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
Chief Judge

Date:  April 22, 2024